[No. 48699-9. En Banc. February 24, 1983.]

PHIL SCHROEDER, INC., *Respondent,* v. ROYAL GLOBE INSURANCE COMPANY, *Appellant.*

*Johnson, Metzler, Gierke & Curwen,* by *Bradford M. Gierke* and *Sandra B. Bobrick,* for appellant.

*Rush, Kleinwachter & Hannula,* by *Daniel L. Hannula* and *Ross E. Taylor,* for respondent.

DORE, J.—Royal Globe Insurance Company (Royal Globe), defendant below, appealed the trial court's judgment for the replacement cost of a carpet in the amount of $8,337.90 plus interest of $1,127.37 plus a judgment for attorney fees under the provisions of Washington's Consumer Protection Act, RCW 19.86. We affirm the trial court, holding that an insurance policy issued to a carpet cleaning company, which contains an exclusion for damage to property "in the care, custody or control of the insured", covers the cost of replacement of wall–to–wall carpeting damaged as a result of the malfunctioning of a cleaning machine being operated by an *employee* of the insured.

## I

An employee of the insured Phil Schroeder, Inc. (Schroeder), a carpet cleaning business, was cleaning the carpeting at a bank on December 31, 1977. During the cleaning process, a diaphragm on the cleaning machine broke, causing oil to mix with the steam and spray onto the carpet. The carpet was badly damaged and had to be replaced, at a cost

of $8,337.90. This cost was paid by the insured who then presented a claim to its insurer, the Royal Globe Insurance Company.

Coverage under the insured's policy was limited by a clause excluding coverage for property damage to "property in the care, custody or control of the insured or to which the insured for any purpose is exercising physical control". Exclusion (k)(3). The policy also set forth the following definition of "insured":

Each of the following is an insured under this insurance to the extent set forth below:

(a) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such a business;

(b) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(i) an employee of the named insured while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

Royal Globe denied Schroeder's claim solely on the basis

that it was excluded under exclusion (k)(3), with Royal Globe claiming that the property was under the "care, custody or control" of the insured, Schroeder. This denial was made despite the fact that employees of Schroeder are not within the definition of the term "insured" under the contract, nor are they named or specified in the exclusionary clause.

When Royal Globe denied the claim, Schroeder brought suit to require the insurer to provide coverage. It also sought damages under RCW 19.86, Washington's Consumer Protection Act (WCPA). The trial judge found that the property in question was under the "care, custody or control" of the employee who was operating the cleaning machine, but the employee was not within the definition of "insured" under the terms of the insurance policy. The trial court further found the insurer had violated the WCPA, and awarded the insured its costs and attorney fees.

## II

There are certain basic principles that apply in any examination of exclusionary clauses in insurance contracts. Chief among these is that exclusionary clauses are to be most strictly construed against the insurer. *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 4 Wn. App. 221, 480 P.2d 537 (1971); *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970). The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940). It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative. *Scales v. Skagit Cy. Med. Bur.*, 6 Wn. App. 68, 491 P.2d 1338 (1971). A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties. *Nautilus, Inc. v. Transamerica Title Ins. Co.*, 13 Wn. App. 345, 534 P.2d 1388 (1975).

These are principles that are not confined to Washington law, but are of nationwide application. The courts of other states have elaborated upon these rules. As stated by the court in *Aetna Cas. & Sur. Co. v. Haas,* 422 S.W.2d 316 (Mo. 1968):

"Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity. As with the provisions of the policy as a whole, so also with the exceptions to the liability of the insured, the language must be construed so as to give the insured the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor."

*Aetna,* at 331 (quoting from *Boswell v. Travelers Indem. Co.,* 38 N.J. Super. 599, 120 A.2d 250 (1956)).

As noted by the court in *Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co.,* 21 Ohio App. 2d 81, 85, 255 N.E.2d 302 (1970):

"Where exceptions, qualifications or exemptions are introduced into an insurance contract, *a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.*"

(Italics ours.) *Harris* (quoting from *Home Indem. Co. v. Plymouth,* 146 Ohio St. 96, 64 N.E.2d 248 (1945)).

The *Harris* court went on to note at page 85 that:

Where there is such an ambiguity in an exclusion, that meaning which excludes the least is necessarily the most liberal construction for the insured.

The definition of "insured" under the Royal Globe policy is set out in the earlier part of this opinion. It very carefully limits the term as it applies to a corporation: (1) to specifically named individuals; (2) to the corporation and any executive officers, directors or shareholders thereof; and (3) for operation of motor vehicles only, to an employee of the insured, but *only* while operating such a vehicle in the

course of his employment.

The exclusionary clause (k)(3), on the other hand, specifies that coverage is excluded for property damage to

> property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

The word "insured" not only appears twice in the exclusionary clause but is set forth in bold letters on the policy.

We find persuasive the reasoning of *Holter v. National Union Fire Ins. Co.*, 1 Wn. App. 46, 459 P.2d 61 (1969). In that case, the court was faced with an insurance policy containing a word–for–word identical exclusionary clause, and a nearly identical definition of "insured". There, an employee of the plaintiff had damaged an elevator while operating it. The insurance company refused to provide coverage and the employer brought suit against it. The insurance company argued that the care, custody or control provision of the policy excluded coverage, even though the employee, and not the insured, was operating the elevator. The company argued that under the doctrine of respondeat superior, the acts of the employee were the acts of the master, so that the exclusionary clause would be operative.

The court rejected the argument of the insurance company, holding, at pages 49–51, that the exclusionary clause did not apply:

> The rule that a master must respond in damages for injuries inflicted by his servant in the course of employment does not dispose of the issue facing us in this appeal. It establishes the liability of defendant "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property" as agreed in the general insuring agreement. It does not broaden the scope of the word "insured" in the care, custody and control exclusion. This result could very easily be accomplished by stating "this policy does not apply . . . to injury or destruction of property in the care, custody or control of the insured *or any of his employees,* or property as to which the insured *or any of his employees* for any purpose is exercising physical control." That such an

inclusion of employees in the "care, custody and control" exclusion has been utilized is demonstrated by the insurance policy referred to in *A. T. Morris & Co. v. Lumber Mut. Cas. Ins. Co.,* 163 Misc. 715, 298 N.Y.S. 227 (Mun. Ct. 1937).

. . .

With the foregoing considerations in mind we will consider the policy in question. The term "insured" was defined with particularity in the insuring contract. The plaintiffs' employee was not included in that description. Since all parts of the policy must be read and construed together we must conclude that plaintiffs' employee was not included in the "care, custody and control" exclusionary clause.

We have a further compelling reason for reaching this result in the well–recognized rule that exclusionary clauses in insurance policies are construed most strongly against the insurer. If there is room for two constructions—one favorable to the insured and the other in favor of the insurer, we must adopt the construction favorable to the insured. *Brown v. Underwriters at Lloyd's,* 53 Wn.2d 142, 332 P.2d 228 (1958).

The reasoning employed by the *Holter* court is also applicable in the present case. In *Holter,* "employee" was entirely omitted from the definition of "insured". In the subject policy, however, "employees" *are* specifically included, but *only* for operation of motor vehicles. They are not included for anything else in the "insured" definition. Thus, Royal Globe has, by its definition of "insured," assured that employees are excluded only when operating motor vehicles.

Only two other cases from other jurisdictions have directly confronted the precise issue now before the court. In *Crist v. Potomac Ins. Co.,* 243 Or. 254, 413 P.2d 407 (1966), the Oregon court discussed the issue in one paragraph, and resolved it adversely to the insured. The *Crist* court did not mention any of the standards applied by the Washington court in considering an exclusionary clause in an insurance policy.

In *Lindell v. Ruthford,* 183 Mont. 135, 598 P.2d 616 (1979), the Montana court considered the matter at more

length, applying the same doctrines of insurance coverage that are utilized by the Washington courts. The *Lindell* court noted the decisions of the Washington court in *Holter* and the Oregon court in *Crist,* and found the Washington court's interpretation in keeping with the way an average person buying insurance would interpret the clause.

Appellants rely heavily upon the Washington cases of *S. Birch & Sons Constr. Co. v. United Pac. Ins. Co.,* 52 Wn.2d 350, 324 P.2d 1073 (1958) and *Madden v. Vitamilk Dairy, Inc.,* 59 Wn.2d 237, 367 P.2d 127 (1961). The records of *Birch* and *Madden,* however, fail to tell us whether or not the exclusion of the insured under the policy involved in the subject cases also included the employee. Without the benefit of such information, such cases are of little value in analyzing the present case.

We conclude the exclusionary provision of the policy does not apply under the circumstances of this case, as the employee operating the cleaning machine at the time of the accident was not within the policy definition of "insured".

### III

We next consider the remaining issue of whether or not Schroeder is entitled to attorney fees in the trial and appellate courts. Where an insurer refuses to pay a claim that is usually within the coverage of a policy, its refusal is unjustified and the insurer is in breach of contract, regardless of its motivation in refusing to pay. 44 Am. Jur. 2d *Insurance* § 1546, at 426–27 (1969); *Nautilus, Inc. v. Transamerica Title Ins. Co.,* 13 Wn. App. 345, 534 P.2d 1388 (1975); *Kong Yick Inv. Co. v. Maryland Cas. Co.,* 70 Wn.2d 471, 423 P.2d 935, 23 A.L.R.3d 1226 (1967). Common law damages for breach of the insurance contract include the amount of the settlement paid by the insured and all costs incurred in adjusting the claim, including attorney fees. *Nautilus, Inc. v. Transamerica Title Ins. Co.,*

*supra.*

■ The ultimate issue is whether, in refusing to pay the claim, Royal Globe breached its duty of good faith and fair dealing under Washington's Consumer Protection Act, RCW 19.86.020. There are no Washington cases discussing what constitutes a breach of a duty of good faith in refusing to pay a claim, but numerous cases have discussed the basis of a breach of duty of good faith within the related context of bad faith failure to adjust or settle a claim within policy limits.

In *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 173–74, 473 P.2d 193 (1970), the court engaged in a lengthy discussion of the concept of good faith in the insurance situation, stating:

> When courts speak of liability for bad faith or the duty to use good faith, they are usually referring to the same obligation. Generally speaking in the context of these cases, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. The court, in *Murray* [*v. Mossman,* 56 Wn.2d 909, 355 P.2d 985 (1960)], uses the terms interchangeably and so do we.
>
> The duty to refrain from bad faith or, alternately, to use good faith is said in our state to be founded on what has been termed a fiduciary relationship existing between the insurer and the insured. *Murray v. Mossman, supra.*
>
> Some jurisdictions have attempted to define the liability of the insurer for bad faith to require an actual intent to mislead or deceive another and stated there would be no liability in a particular transaction unless there was conduct equivalent to fraud or actual bad faith. The basis of liability of the insurer is not this narrowly founded in Washington. The recognition in *Murray* that the duty of the insurance company springs from a fiduciary relationship implies a broad obligation of fair dealing.
>
> The court in *State Farm Mut. Auto. Ins. Co. v. White,* 248 Md. 324, 236 A.2d 269 (1967), recognized that for liability to exist on the part of the insurer, the term "good faith" did not tend to connote or imply by use of

that term that dishonesty, misrepresentation, deceit, or a species of fraud must be present . . .

(Footnote and citations omitted.) *See also Hamilton v. State Farm Ins. Co.,* 83 Wn.2d 787, 523 P.2d 193 (1974).

Generally, the insurance company must have a reasonable and valid ground on which to oppose payment of the claim to avoid the application of penalties and attorney fees.

> The insurer is subject to the statutory penalty *where it refuses to make payment for a reason which has by prior cases been held invalid.*

(Italics ours.) 16 G. Couch, *Insurance* § 58:168 (2d ed. 1966).

> Where an insurer refuses to make payment or delays, it must do so in good faith upon reasonable grounds.
> A refusal to pay based upon mere conjecture may be found to be vexatious.

(Footnote omitted.) 16 G. Couch, *Insurance* § 58:165 (2d ed. 1966).

> Where the insurer's refusal to pay was based upon an erroneous construction of its policy and the law applicable thereto, the delay is due to its own fault, and the statutory penalty and the attorney's fee may be imposed.

(Footnote omitted.) 16 G. Couch, *Insurance* § 58:173 (2d ed. 1966).

In the present case, Royal Globe relied upon cases from other jurisdictions and the Washington cases of *Birch* and *Madden* in its refusal to recognize coverage. Therefore, we cannot say Royal Globe breached its good faith fiduciary duty in refusing to extend coverage in the absence of litigation.

We reverse the trial court's holding that the appellant insurance company breached its duty of good faith and fair dealing in violation of RCW 19.86, and deny the plaintiff's claim for attorney fees. All other aspects of the trial court judgment are affirmed.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Review granted by Supreme Court May 31, 1983.