229 P.3d 693 (2010)
168 Wash.2d 398
AMERICAN BEST FOOD, INC., a Washington corporation d/b/a/ Café Arizona; and Myung Chol Seo and Hyun Heui Seo-Jeong, Respondents,
v.
ALEA LONDON, LTD., a foreign corporation, Petitioner.
No. 80753-1.
Supreme Court of Washington, En Banc.
Argued October 21, 2008.
Decided March 18, 2010.
*694 J.C. Ditzler, Melissa O'Loughlin White, Molly Siebert Eckman, Cozen O'Connor, Seattle, WA, Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, for Petitioners.
Scott R. Sleight, Ahlers & Cressman P.L.L.C., Benjamin I. VandenBerghe, Scott Easter, Montgomery Purdue Blankenship & Austin, Seattle, WA, for Respondents.
Karen Southworth Weaver, Soha & Lang, P.S., Seattle, WA, for Amicus Curiae on behalf of Professor Karen Weaver and Others.
Pamela A. Okano, Michael Simpson Rogers, Reed McClure, Seattle, WA, for Amicus Curiae on behalf of State Farm Fire & Casualty Company.
Bryan Patrick Harnetiaux, Spokane, WA, David Merritt Beninger, Luvera, Barnett, Brindley, Beninger, et al., Seattle, WA, for Amicus Curiae on behalf of Washington State Association For Justice Foundation and Washington State Trial Lawyers.
CHAMBERS, J.
¶ 1 This court is called upon to decide whether a complaint alleging that postassault negligence caused or exacerbated injuries falls under an insurance policy's assault and battery exclusion. We find it does not. We are also asked whether an insurer breached its duty to defend as a matter of law when, relying upon an equivocal interpretation of case law, it gave itself the benefit of the doubt rather than give that benefit to its insured. We find that it has. We affirm the Court of Appeals in part and remand for further proceedings consistent with this opinion.

*695 FACTS
¶ 2 American Best Food, Inc., operates Café Arizona, a Federal Way nightclub.[1] On January 19, 2003, after they apparently brushed against each other on the dance floor, George Antonio confronted Michael Dorsey inside Café Arizona. Club security escorted Antonio out of the building. When security later let Antonio return, he confronted Dorsey again. This time security escorted both men outside. Once outside the nightclub, Antonio pulled a gun and shot Dorsey nine times. A club security guard returned fire, wounding Antonio. Dorsey apparently staggered to the alcove of the club, where security guards carried him inside. Myung C. Seo instructed club employees to remove Dorsey from the establishment. According to Dorsey's complaint, the employees "dumped him on the sidewalk." Clerk's Papers (CP) at 42.
¶ 3 Later that year, Dorsey sued, alleging that Café Arizona failed to take reasonable precautions to protect him against criminal conduct despite considerable notice of the potential harm given the history of violence at the club and the specific conduct of Antonio. In an amended complaint, Dorsey also explicitly contended that the security guards exacerbated his injuries by dumping him on the sidewalk after he was shot. Café Arizona promptly sought protection from its insurer, Alea London, Ltd., by notifying it of Dorsey's lawsuit and asserting rights to defense and indemnity. Alea refused, citing exclusion in its policy for injuries or damages "arising out of" assault or battery. CP at 107-09. Café Arizona's counsel protested, contending that the complaint contained factual allegations of additional injuries caused by the negligence of Café Arizona's employees, injuries to which the assault and battery exclusion may not necessarily apply, including claims of employee postassault negligence. Alea still refused, relying on McAllister v. Agora Syndicate, Inc., 103 Wash. App. 106, 11 P.3d 859 (2000), for an expansive reading of the exclusion and contending that under "McAllister, Washington courts would likely find the allegations of negligence not sufficient" to trigger coverage. CP 110-11. Café Arizona's counsel responded again, arguing that at least some question of coverage existed, thus entitling the insured to a defense. Counsel especially called the insurer's attention to an out-of-state case that clearly supported coverage, citing Western Heritage Insurance Co. v. Estate of Dean, 55 F.Supp.2d 646 (E.D.Texas, 1998) (finding that a tavern owner's failure to render aid to an injured patron was a covered occurrence, not excluded by an assault and battery exclusion). CP at 274. Alea again declined. Further correspondence from Café Arizona to Alea, including provision of an expert witness report, failed to change Alea's position.
¶ 4 Café Arizona sued Alea in May 2005 for breach of contract, bad faith, and violation of the Consumer Protection Act, chapter 19.86 RCW. On cross motions for summary judgment, the King County Superior Court found for Alea and dismissed Café Arizona's claims. Café Arizona appealed. The Court of Appeals partially reversed, holding that Alea breached its duty to defend and that summary dismissal of the bad faith refusal to defend and indemnification claims was inappropriate. Am. Best Food, Inc. v. Alea London, Ltd., 138 Wash.App. 674, 689, 691, 158 P.3d 119 (2007). It affirmed dismissal of Café Arizona's consumer protection act and insurance regulation claims. We granted review. Am. Best Food, Inc. v. Alea London, Ltd., 163 Wash.2d 1039, 187 P.3d 268 (2008).

ANALYSIS
¶ 5 This case comes to this court on review of the Court of Appeals' partial reversal of a summary dismissal of respondents' claims. Summary judgment is reviewed de novo. Liberty Mut. Ins. Co. v. Tripp, 144 Wash.2d 1, 10, 25 P.3d 997 (2001). We interpret insurance policy provisions as a matter of law. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 575, 964 P.2d 1173 (1998).

*696 A. Duty To Defend

¶ 6 We have long held that the duty to defend is different from and broader than the duty to indemnify. Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 392, 823 P.2d 499 (1992) (citing 1A ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 5B.15, at 5B-143 (1986)). The duty to indemnify exists only if the policy actually covers the insured's liability. The duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint. Woo v. Fireman's Fund Ins. Co., 161 Wash.2d 43, 53, 164 P.3d 454 (2007). "The duty to defend `arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002) (quoting Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 425, 983 P.2d 1155 (1999)). An insurer may not put its own interests ahead of its insured's. Mut. of Enumclaw Ins. Co. v. T & G Const., Inc., 165 Wash.2d 255, 269, 199 P.3d 376 (2008) (citing Butler, 118 Wash.2d at 389, 823 P.2d 499). To that end, it must defend until it is clear that the claim is not covered. The entitlement to a defense may prove to be of greater benefit to the insured than indemnity. Truck Ins. Exch., 147 Wash.2d at 765, 58 P.3d 276.
¶ 7 The insurer is entitled to investigate the facts and dispute the insured's interpretation of the law, but if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. Id. at 760, 58 P.3d 276 ("Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend.") (citing Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 561, 951 P.2d 1124 (1998)). When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action. See id. at 761, 58 P.3d 276 (citing Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 93-94, 776 P.2d 123 (1989)). "Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination." Id. Instead,
[i]f the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel. "When that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay."
Id. (citation omitted) (quoting Kirk, 134 Wash.2d at 563 n. 3, 951 P.2d 1124). With these principles in mind, we turn to the assault and battery exclusion.

B. Exclusion

¶ 8 Alea argues that the Court of Appeals erred when it held that Alea had a duty to defend. It contends the assault and battery exclusion clearly bars coverage of the claim as alleged in the complaint, and therefore, it had no duty to defend its insured. The assault and battery exclusion reads:
¶ 9 This insurance does not apply to any claim arising out of
A. Assault and/or Battery committed by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by the insured or any officer, agent, servant or employee of the insured or by any other person; or
B. Any actual or alleged negligent act or omission in the:
1. Employment;
2. Investigation;
3. Supervision;
4. Reporting to the proper authorities or failure to so report; or
5. Retention; of a person for whom any insured is or ever was legally responsible, which results in Assault and/or Battery; or
C. Any actual or alleged negligent act or omission in the prevention or suppression of any act of Assault and/or Battery.
*697 CP at 62. Alea argues that absent the assault, Dorsey would have no cause of action against Café Arizona and thus, his entire claim, including his claim for any injuries sustained when club security guards allegedly dumped him on the sidewalk on orders of the club owner, is excluded under the policy.
¶ 10 "[E]xclusionary clauses are to be most strictly construed against the insurer." Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wash.2d 65, 68, 659 P.2d 509 (1983) (citing W. Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 4 Wash.App. 221, 480 P.2d 537, overruled on other grounds by 80 Wash.2d 38, 491 P.2d 641 (1971)), modified on other grounds, 101 Wash.2d 830, 683 P.2d 186 (1984). Alea relies on McAllister to posit a "but for" theory justifying its denial of a defense of Dorsey's lawsuit. McAllister involved a fight between bar patrons resulting in serious injury to McAllister. McAllister, 103 Wash.App. at 108, 11 P.3d 859. Prior to the fight, club employees removed the other combatant but later allowed him to reenter. Id. Under an assignment of rights, McAllister brought a declaratory judgment action against the bar's insurer after it denied coverage of his claim. Id. The Court of Appeals affirmed a summary dismissal of McAllister's claims, concluding that the insurer owed neither a duty to defend nor a duty to indemnify. Id. Reasoning that "without first establishing the underlying assault, negligence cannot be proved," the court held that McAllister's underlying claim was "`based on'" the assault and battery. Id. at 111, 11 P.3d 859. Thus, his injuries were excluded from the policy. Id.
¶ 11 McAllister, however, is a significantly different case from the one before us. As the Court of Appeals noted, the claims in McAllister involved preassault negligence by club employees. Am. Best Food, Inc., 138 Wash.App. at 686, 158 P.3d 119 (citing McAllister, 103 Wash.App. at 110-11, 11 P.3d 859). In contrast, the claims in Dorsey's complaint involve "`discrete intervening act[s] of alleged negligence,'" many of which occurred after the assault. Id. at 687, 158 P.3d 119 (quoting United Nat'l Ins. Co. v. Penuche's, Inc., 128 F.3d 28, 32 (1st Cir.1997)).
¶ 12 Many states have found a preassault/postassault distinction in analyzing "assault and battery" exclusions. See, e.g., Penuche's, 128 F.3d at 30-32 (holding that injuries sustained when a bouncer grabbed a bar patron in a "bear hug" to stop a fight did not arise out of the originating fight); Bucci v. Essex Ins. Co., 393 F.3d 285, 287, 290-91 (1st Cir.2005) (duty to defend attaches when a bar patron suffered injuries of unknown origin after being knocked unconscious); Planet Rock, Inc. v. Regis Ins. Co., 6 S.W.3d 484, 485, 491 (Tenn.Ct.App. 1999) (complaint alleging failure to render aid to a patron injured in a fight outside of insured's club was sufficient to trigger duty to defend); West v. City of Ville Platte, 237 So.2d 730, 732-33 (La.Ct.App.1970) (duty to defend arose in a lawsuit alleging negligent postassault care of a prisoner beaten in custody); W. Heritage Ins. Co. v. Estate of Dean, 55 F.Supp.2d 646, 647, 652 (E.D.Tex. 1998) (duty to defend arose on a failure to render aid claim against a bar after a patron died after being beaten in a barroom fight). But see Taylor v. Duplechain, 469 So.2d 472, 474 (La.Ct.App.1985). In Penuche's, Bucci, Planet Rock, West, and Dean, a pattern of holding an insurer to a duty to defend in the case of postassault negligence emerges. "Arising out of" in those cases has not been interpreted to inoculate insurers against such a duty because the various negligent acts of insuredswhile related to the excluded conductwere nevertheless independent enough to warrant a defense. In these cases, it was irrelevant that the chain of events was caused by an assault; if the insured had acted exactly the same in response to covered occurrence, liability could have been the same.
¶ 13 Alea contends that persuasive out-of-state precedent should not trump binding in-state law. We agree. However, as the Court of Appeals noted, Washington courts have yet to consider the factual scenario before us today. Evaluation of out-of-state cases was appropriate in deciding which rule to apply. The lack of any Washington case directly on point and a recognized distinction between preassault and postassault negligence in other states presented a legal uncertainty with regard to Alea's duty. Because *698 any uncertainty works in favor of providing a defense to an insured, Alea's duty to defend arose when Dorsey brought suit against Café Arizona. Truck Ins. Exch., 147 Wash.2d at 760, 58 P.3d 276.
¶ 14 Alea and its amicus State Farm Fire & Casualty Company argue that the Court of Appeals' approach "smacks of proximate cause analysis," Br. of Amicus Curiae State Farm at 9, and is contrary to established Washington law, Suppl. Br. of Pet'r at 4. Alea contends that the phrase "arising out of" encompasses any occurrence with a causal connection to the excluded act or omission. We disagree that any causal connection whatsoever between an assault or battery and subsequent negligence would suffice to render the resultant injuries "clearly not covered." Alea directs our attention to three cases. First, in Toll Bridge Authority v. Aetna Insurance Co., 54 Wash.App. 400, 403, 773 P.2d 906 (1989), the Court of Appeals construed a similar term in an insurance policy issued to a ferry operator. When a car exiting a ferry jumped a protective block, it struck and injured four foot passengers. Id. at 401, 773 P.2d 906. The court held that the insurers owed no duty to indemnify the insured ferry system because one policy excluded coverage for "claims or accidents arising out of the operations, maintenance or use of any watercraft" and the other excluded coverage for "the operation, maintenance, use, loading, or unloading of any watercraft." Id. at 404-05, 773 P.2d 906 (citing policies). Reasoning that "[t]he phrase `arising out of' is unambiguous and has a broader meaning than `caused by' or `resulted from,'" the court interpreted the phrase to mean "`originating from', `having its origin in', `growing out of', or `flowing from.'" Id. at 404, 773 P.2d 906 (quoting State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., 14 Wash.App. 541, 543, 543 P.2d 645 (1975) and Avemco Ins. Co. v. Mock, 44 Wash.App. 327, 329, 721 P.2d 34 (1986)). The Toll Bridge court distinguished three cases[2] where the policy language "logically raised the causation issues decided by the courts." Id. at 406, 773 P.2d 906. Rather than adopt proximate cause as coverage determinative, the court stated that "`[a]rising out of' and `proximate cause' describe two different concepts." Id. at 407, 773 P.2d 906. However, Toll Bridge did not consider an allegation that postaccident negligence by the insured caused injuries.
¶ 15 Second, in Krempl v. Unigard Security Insurance Co., 69 Wash.App. 703, 705-06, 850 P.2d 533 (1993),[3] the court declined to apply the "efficient proximate cause" analysis. There, motorists had attached a makeshift gas tank and fuel delivery system to a car they recently purchased. Id. at 704, 850 P.2d 533. When the gas tank caught fire, the plaintiff tried to assist in its removal. Id. One motorist tossed the fiery tank on the ground, spraying ignited gasoline onto the plaintiff. Id. The Court of Appeals affirmed a summary dismissal in favor of the motorists' insurance company. Id. at 709, 850 P.2d 533. Because the chain of events leading to the plaintiff's injuries began with an excluded activitythe operation of an automobilethe court held that the exclusion applied. Id. at 705-07, 850 P.2d 533. However, in Krempl, unlike here, there were no intervening, allegedly negligent acts by the insured.
¶ 16 Third, in Detweiler v. J.C. Penney Casualty Insurance Co., 110 Wash.2d 99, 101, 751 P.2d 282 (1988), a claimant shot his.357 magnum pistol at the wheel and tire of his truck as it was being driven away by a friend of his, injuring himself in the process. The court held that the driver's liability for the claimant's injuries "arose out of the driver's `use' of the pickup." Id. at 109, 751 P.2d *699 282. The court reasoned that "[i]n order for. . . liability . . . to arise out of the `use' of an uninsured motor vehicle, it is not necessary that the use be the proximate cause of the. . . injuries . . .; it is only necessary that there be a causal connection between them." Id.; see also Transamerica Ins. Group v. United Pac. Ins. Co., 92 Wash.2d 21, 25-28, 593 P.2d 156 (1979) (attaching liability because there was a causal connection between the use of a vehicle and an accident caused when a weapon stored inside went off while being moved), overruled on other grounds by State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995). Again, however, the court was not considering a case of postaccident negligence by its insured.
¶ 17 Alea's interpretation of Washington law fails to persuade us that its interpretation of the contract is correct. We find persuasive precedent from other states that have found claims that the insured acted negligently after an excluded event are covered. Further, a balanced analysis of the case law should have revealed at least a legal ambiguity as to the application of an "assault and battery" clause with regard to postassault negligence at the time Café Arizona sought the protection of its insurer, and ambiguities in insurance policies are resolved in favor of the insured. Mut. of Enumclaw Ins. Co. v. Jerome, 122 Wash.2d 157, 161, 856 P.2d 1095 (1993) (citing Rones v. Safeco Ins. Co. of Am., 119 Wash.2d 650, 835 P.2d 1036 (1992)). Because such ambiguity is to be resolved in favor of the insured, we hold that Alea's policy afforded coverage for postassault negligence to the extent it caused or enhanced Dorsey's injuries.

C. Breach as a Matter of Law

¶ 18 We turn now to whether Alea breached its duty to defend as a matter of law, which we find was properly preserved on this record. Alea contends that because it relied upon a reasonable interpretation of the law in refusing to defend, its refusal does not constitute bad faith.[4]
¶ 19 Alea relies upon Leingang v. Pierce County Medical Bureau, Inc., 131 Wash.2d 133, 930 P.2d 288 (1997), which involved the denial of medical benefits and the duty to indemnify, not the duty to defend. We do not find Leingang helpful because the duties to defend and indemnify are quite different. Alea's reliance on Kirk is also misplaced. Kirk was a certified question from the federal court in which we were asked to assume both a duty to defend and bad faith. Kirk, 134 Wash.2d at 560, 951 P.2d 1124. There, we were considering an "intentional abuse of a fiduciary relationship." Id. at 562, 951 P.2d 1124. The important holding of Kirk is our reaffirmation of the presumption of harm that occurs when an insurer wrongfully refuses to defend:
The rebuttable presumption of harm applies to the question before us because a bad faith breach of the duty to defend wrongfully deprives the insured of a valuable benefit of the insurance contract, and leaves the insured faced with the difficult problem of proving harm. Without the rebuttable presumption of harm, the insurer could defend its position under the following contract theoryeven if there were a duty to defend, our bad faith breach did not cause injury to the insured because ultimate liability was found to be outside the scope of coverage. . . . The rebuttable presumption of harm must be applied because an insured should not be required to prove what might have happened had the insurer not breached its duty to defend in bad faith; that obligation rightfully belongs to the insurer who caused the breach. Butler, 118 Wash.2d at 390 [823 P.2d 499].
Id. at 563, 951 P.2d 1124. This presumption of harm animates much of our post-Butler insurance jurisprudence. As recently as Woo v. Fireman's Fund Insurance Co., 161 Wash.2d 43, 164 P.3d 454 (2007), we rejected the argument now advanced by Alea that an insurer may rely upon its own interpretation of case law to refuse to defend:

*700 [The insurer] is essentially arguing that an insurer may rely on its own interpretation of case law to determine that its policy does not cover the allegations in the complaint and, as a result, it has no duty to defend the insured. However, the duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, [the insurer] did the oppositeit relied on an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured.
Id. at 60, 164 P.3d 454. We upheld the jury's conclusion that the denial was in bad faith. Id. at 68, 164 P.3d 454.
¶ 20 An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded. See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wash.2d 122, 130, 196 P.3d 664 (2008) (quoting Smith v. Safeco Ins. Co., 150 Wash.2d 478, 485, 78 P.3d 1274 (2003)); Truck Ins. Exch., 147 Wash.2d at 777, 58 P.3d 276. We specifically disapprove of language to the contrary, e.g., Holly Mountain Res., Ltd. v. Westport Ins. Corp. 130 Wash. App. 635, 650, 104 P.3d 725 (2005). This test is in the disjunctive.[5]
¶ 21 Again, if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend. Truck Ins. Exch., 147 Wash.2d at 760, 58 P.3d 276 (citing Kirk, 134 Wash.2d at 561, 951 P.2d 1124). Exclusions are interpreted narrowly. Phil Schroeder, 99 Wash.2d at 68, 659 P.2d 509. In order to put the incentives in the right place and because it is often impossible for an insured to prove damages for wrongful refusal to defend, we have established a remedy that does not require it. See, e.g., Truck Ins. Exch., 147 Wash.2d at 765, 58 P.3d 276; Kirk, 134 Wash.2d at 560, 951 P.2d 1124; Butler, 118 Wash.2d at 393-94, 823 P.2d 499. It cannot be said that the insurer did not put its own interest ahead of its insured when it denied a defense based on an arguable legal interpretation of its own policy. Alea failed to follow well established Washington State law giving the insured the benefit of any doubt as to the duty to defend and failed to avail itself of legal options such as proceeding under a reservation of rights or seeking declaratory relief. Alea's failure to defend based upon a questionable interpretation of law was unreasonable and Alea acted in bad faith as a matter of law.[6]

CONCLUSION
¶ 22 In sum, the duty to defend is different from and broader than the duty to indemnify. Butler, 118 Wash.2d at 392, 823 P.2d 499. The duty to defend is triggered when a complaint against an insured, construed liberally, alleges facts which could, if proved, impose liability upon the insured within the policy coverage. Truck Ins. Exch., 147 Wash.2d at 760, 58 P.3d 276. In deciding whether to defend, an insurer may *701 not put its own interest above that of its insured. T & G Const., Inc., 165 Wash.2d at 269, 199 P.3d 376. An insurer may not refuse to defend based upon an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured. Woo, 161 Wash.2d at 60, 164 P.3d 454. An insured may defend under a reservation of rights and may seek declaratory relief to establish that its policy excludes coverage. Truck Ins. Exch., 147 Wash.2d at 760-61, 58 P.3d 276. Alea's "assault and battery" exclusion does not apply to allegations that postassault negligence enhanced a claimant's injuries. Alea's refusal to defend Café Arizona based upon an arguable interpretation of its policy was unreasonable and therefore in bad faith. Alea breached its duty to defend as a matter of law. We affirm the Court of Appeals in part and remand to the trial court for further proceedings consistent with this opinion.
WE CONCUR: Justices CHARLES W. JOHNSON, MARY E. FAIRHURST, RICHARD B. SANDERS, and PHILIP J. THOMPSON, Justice Pro Tem.
OWENS, J., concurring/dissenting.
¶ 23 This case involves three types of claims by American Best Food, Inc. (Café Arizona)[1] against its insurer, Alea London, Ltd. (Alea): breach of contract; the tort of bad faith; and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. The majority holds that, as a matter of law, Alea breached its contractual duty to defend Café Arizona and that Café Arizona failed to present sufficient evidence to survive a summary judgment motion on its CPA claims. With these holdings I readily agree. However, because I find that breach of an insurance contract does not create per se liability for the tort of bad faith, I must respectfully dissent from that part of the majority opinion addressing Café Arizona's bad faith claim.
¶ 24 This court has long recognized that breach of an insurance contract and the tort of bad faith are separate claims that are analyzed independently. Breach of an insurance contract is neither necessary, Coventry Associates v. American States Insurance Co., 136 Wash.2d 269, 279, 961 P.2d 933 (1998), nor sufficient, Greer v. Northwestern National Insurance Co., 109 Wash.2d 191, 201-02, 205, 743 P.2d 1244 (1987), to establish the tort of bad faith. See also Transcon. Ins. Co. v. Wash. Pub. Utils. Dists. Util. Sys., 111 Wash.2d 452, 470, 760 P.2d 337 (1988) (holding that "[a] denial of coverage based on a reasonable interpretation of the policy is not bad faith," even if incorrect).
¶ 25 The majority ably sets forth the standard for finding that an insurer has breached its duty to defend an insured. The duty to defend is broader in scope than the duty to indemnify, Truck Insurance Exchange v. VanPort Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002), and "is triggered if the insurance policy conceivably covers the allegations in the complaint," Woo v. Fireman's Fund Insurance Co., 161 Wash.2d 43, 53, 164 P.3d 454 (2007) (emphasis omitted). Relying on out-of-state precedent, the majority announces a new rule of Washington lawthat postassault negligence does not fall under an insurance policy's "arising out of" assault or battery exception. See majority at 697-98. I agree that, because it was conceivable in light of out-of-state precedent suggesting that it might have a duty to defend, Alea breached its duty to defend. This, however, does not resolve the question of whether Alea acted in bad faith when it refused to defend Café Arizona. The standard for finding that an insurer has breached its duty of good faith is a different matter entirely.
¶ 26 A claim for breach of good faith "`sounds in tort.'" St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wash.2d 122, 130, 196 P.3d 664 (2008) (quoting Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 389, 823 P.2d 499 (1992)). As such, a plaintiff must demonstrate duty, breach, causation, and harm. Id. (citing Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wash.2d 903, 916, 169 P.3d 1 (2007)). To establish the breach element, the plaintiff must show that the insurer's action was "unreasonable, frivolous, or unfounded." Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998). This is a "heavy burden." Overton v. Consol. Ins. Co., 145 Wash.2d 417, 433, 38 *702 P.3d 322 (2002). Put another way, "[i]f the insurer's denial of coverage is based on a reasonable interpretation of the insurance policy, there is no action for bad faith." Id. (emphasis added).
¶ 27 In the present case, Alea had a duty to defend Café Arizona so long as the insurance policy "conceivably cover[ed]" the conduct alleged in the complaint. Woo, 161 Wash.2d at 53, 164 P.3d 454 (emphasis omitted). Thus, the question squarely presented is whether it was unreasonable, frivolous, or unfounded for Alea to determine that, under Washington law, its policy did not conceivably cover Café Arizona's claim. That an insurer is incorrect does not necessarily mean that it is unreasonable. Justice Bridge, joined by Chief Justice Alexander and Justices Smith and Madsen, dissenting in Truck Insurance Exchange, adopted precisely this position, finding that the insurer had breached its duty to defend but not in bad faith. 147 Wash.2d at 777, 58 P.3d 276 (Bridge, J., dissenting). The majority, which I joined, did not disagree that such a result was possible, but simply found that, under the facts of that case, there was sufficient additional evidence of bad faith (specifically, an "unconscionable delay in responding to its insured"). Truck Ins. Exch., 147 Wash.2d at 764, 58 P.3d 276.
¶ 28 In the present case, Michael Dorsey was shot nine times by George Antonio. Dorsey returned to the club and was carried inside, where he remained until the club owner instructed employees to remove him from the building. Café Arizona's insurance policy contains the following provision:
¶ 29 This insurance does not apply to any claim arising out of
A. Assault and/or Battery committed by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by the insured or any officer, agent, servant or employee of the insured or by any other person.
Clerk's Papers at 62. Relying on this provision, Alea determined that it had no duty to defend Café Arizona in a negligence action brought by Dorsey. Alea is surely correct in concluding that the shooting was an "assault or battery." Alea is also surely correct in determining that any exacerbation of Dorsey's injuries is causally related to the assault or battery. The remaining issue is whether it was reasonable for Alea to determine that "arising out of" requires only a causal relationship.
¶ 30 In determining that Café Arizona's negligence arose out of assault or battery, Alea relied on well-established Washington case law. In Toll Bridge Authority v. Aetna Insurance Co., 54 Wash.App. 400, 404, 773 P.2d 906 (1989), the Court of Appeals interpreted the phrase "arising out of" in an insurance contract to mean "`originating from', `having its origin in', `growing out of', or `flowing from,'" id. (quoting Avemco Ins. Co. v. Mock, 44 Wash.App. 327, 329, 721 P.2d 34 (1986)), and expressly noted that it "has a broader meaning than `caused by' or `resulted from,'" id. (quoting State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., 14 Wash.App. 541, 543, 543 P.2d 645 (1975)). In McAllister v. Agora Syndicate, Inc., 103 Wash.App. 106, 11 P.3d 859 (2000), the Court of Appeals interpreted an assault and battery exclusion in a case stemming from an assault in a nightclub. There, club staff allowed persons previously removed from the club due to an altercation to reenter the club. Id. at 108, 11 P.3d 859. The two involved in the previous altercation again confronted one another and patrons "informed [club] security personnel of the ensuing melee, but they failed to take any action." Id. Interpreting the language of the policy, the Court of Appeals held that the insurer had no duty to defend because the negligence claim by the injured patron fell within the "based on assault and/or battery" exception. Id. at 109, 111, 11 P.3d 859. Numerous other cases have similar holdings. See, e.g., Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wash.2d 99, 109, 751 P.2d 282 (1988) (holding that liability arises out of an event so long as there is a "causal connection" between the event and the liability); Krempl v. Unigard Sec. Ins. Co., 69 Wash.App. 703, 706-07, 850 P.2d 533 (1993) (holding that an "arising out of" exclusion applies to claims flowing from or growing out of the excluded activity).
*703 ¶ 31 I agree that the foregoing cases are narrowly distinguishable, as the facts in this case present a matter of first impression. However, these cases interpret similar and sometimes identical language and all point in a single directionthat "arising out of" is a broad term covering most events causally related to the specified activity. The majority cites no case from this jurisdiction pointing in the opposite direction. Though I join the majority in determining, as a matter of first impression, that postassault negligence exacerbating injuries should not be considered "arising out of" assault or battery, I cannot conclude that Alea's contrary determination, though incorrect, was unreasonable, frivolous, or unfounded in light of the existing case law.
¶ 32 The majority fails to properly analyze Café Arizona's claim for the tort of bad faith. It provides no meaningful independent analysis of the question of whether the insurer acted in an "unreasonable, frivolous, or unfounded" manner, Kirk, 134 Wash.2d at 560, 951 P.2d 1124, in determining that its policy did not conceivably cover the conduct at issue. The majority certainly does not address whether Café Arizona has met its "heavy burden," Overton, 145 Wash.2d at 433, 38 P.3d 322 (emphasis added), of proving that Alea acted in bad faith. Instead, the majority reasons that Alea failed to give "the insured the benefit of any doubt as to the duty to defend. . . . Alea's failure to defend based upon a questionable interpretation of law was unreasonable and Alea acted in bad faith as a matter of law." Majority at 700. This analysis misses the mark, conflating the duty to defend and the duty of good faith.
¶ 33 The majority supports its finding of bad faith with a single argument: that Alea relied on a questionable interpretation of law. Id. at 700. Proof that an insurer failed to defend based on a questionable interpretation of law is proof only of breach of its duty to defend, not breach of its duty of good faith. Truck Ins. Exch., 147 Wash.2d at 760, 58 P.3d 276 ("Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend." (emphasis added)). The majority embellishes on this standard, noting that Alea "put its own interest ahead of its insured" and failed to give "the insured the benefit of any doubt." Majority at 700. These statements will always apply where an insurer relies on a questionable interpretation of law in its favor. The statements do not, however, get the majority any closer to its conclusion that Alea acted in bad faith; they simply reinforce that Alea breached its duty to defend. See Woo, 161 Wash.2d at 60, 164 P.3d 454 ("the duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint" (emphasis added)). The only other support for the majority's conclusion that Alea's breach of its duty to defend was "unreasonable, frivolous, or unfounded" is its conclusory statement that "Alea's failure to defend based upon a questionable interpretation of law was unreasonable." Majority at 700. A conclusory statement is no substitute for legal analysis. In finding that Alea breached its duty of good faith, the majority is either relying on its conclusory statement or presuming that a breach of the duty to defend is per se evidence of a breach of the duty of good faith. The former is unfounded while the latter is contrary to our precedent, which has held that breach of the duty to defend is insufficient to show the tort of bad faith. Further, the result is an undesirable outcome, as bad faith determinations should be reserved for more culpable conduct.
¶ 34 I take exception to one additional aspect of the majority opinion. The majority's explanation of the test for finding bad faith by an insurer calls into question multiple holdings of this court. In setting forth the test for finding bad faith, the majority begins with the uncontroversial standard that the insurer's action must be "unreasonable, frivolous, or unfounded." Id. at 700. The majority proceeds, however, to "disapprove of language to the contrary," id., followed by a citation to Holly Mountain Resources, Ltd. v. Westport Insurance Corp., 130 Wash.App. 635, 650, 104 P.3d 725 (2005). At the cited page, the only discussion of the standard for the tort of bad faith, apart from setting forth the language also used by the majority, is the following: "The insured does not establish bad faith . . . when . . . the insurer denies *704 coverage or fails to provide a defense based upon a reasonable interpretation of the insurance policy." Id. Multiple precedents of this court include nearly identical language, see Overton, 145 Wash.2d at 433, 38 P.3d 322; Kirk, 134 Wash.2d at 560, 951 P.2d 1124; Transcon. Ins. Co., 111 Wash.2d at 470, 760 P.2d 337, and it has never been thought to be "contrary" to the general standard.
¶ 35 If the majority wishes to overturn a line of this court's cases, it must make "`a clear showing that [the] established rule is incorrect and harmful.'" Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970)). It has not done so here. Inclusion of this apparent non sequitur by the majority, disapproving of the language in Holly Mountain Resources, is of questionable effect, for lower courts should not lightly presume that this court overturns its prior decisions sub silentio.
¶ 36 In sum, I conclude that Alea's determination that, under Washington law, it had no duty to defend Café Arizona was not "unreasonable, frivolous, or unfounded," even though it was incorrect. Because the court today holds that Alea breached its duty to defend Café Arizona, Café Arizona will be restored to the position it would have been in had Alea not violated its duty. Kirk, 134 Wash.2d at 561, 951 P.2d 1124. This includes attorney fees and damages, up to the policy limits. Greer, 109 Wash.2d at 202-03, 743 P.2d 1244. However, because I conclude that Café Arizona did not meet its "heavy burden" of proving that Alea's refusal to defend was "unreasonable, frivolous, or unfounded," I cannot agree that Café Arizona is entitled to summary judgment on its bad faith tort claim.
WE CONCUR: Chief Justice BARBARA A. MADSEN, Justices GERRY L. ALEXANDER, and JAMES M. JOHNSON.
NOTES
[1] While the record is not completely clear, it appears that respondents Myung C. Seo and Hyun Heui Seo-Jeong own and operate American Best Food, Inc. American Best Food, Inc., in turn, operates Café Arizona, a nightclub. We use the name "Café Arizona" for all the respondents.
[2] Villella v. Pub. Employees Mut. Ins. Co., 106 Wash.2d 806, 725 P.2d 957 (1986); Graham v. Pub. Employees Mut. Ins. Co., 98 Wash.2d 533, 656 P.2d 1077 (1983); Safeco Ins. Co. of Am. v. Hirschmann, 52 Wash.App. 469, 760 P.2d 969 (1988), aff'd, 112 Wash.2d 621, 773 P.2d 413 (1989).
[3] "[W]here a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage." McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992) (citing Graham v. Pub. Employees Mut. Ins. Co., 98 Wash.2d 533, 538, 656 P.2d 1077 (1983)).
[4] We also accepted review of Café Arizona's claim that Alea failed to do an adequate investigation. However, it does not appear that any failure to investigate was relevant to Alea's legal interpretation or rejection of its duty to defend. We do not disturb the Court of Appeals holding on this issue.
[5] Contrary to the dissent's suggestion, we do not presume that a breach of the duty to defend is per se bad faith. Dissent at 7. We respectfully disagree with the dissent's analysis of our case law. Statements made in passing, taken in isolation, are not holdings of this court. The dissent relies on a statement made in passing in Overton v. Consolidated Insurance Co., 145 Wash.2d 417, 433, 38 P.3d 322 (2002) that "[i]f the insurer's denial of coverage is based on a reasonable interpretation of the insurance policy, there is no action for bad faith." But Overton was not considering an erroneous decision not to defend by an insurance company. Overton relied on Kirk, 134 Wash.2d at 560, 951 P.2d 1124, where we were asked to assume bad faith by the federal court, and the statement was there to frame the analysis. It was, thus, dicta. Kirk relied on a consumer protection act case, Transcontinental Insurance Co. v. Washington Public Utilities Districts' Utility System, 111 Wash.2d 452, 470, 760 P.2d 337 (1988), which predated this court's recognition of bad faith as separate tort in Butler by several years. The instant case appears to be the court's first opportunity to consider whether we should import bad faith under the consumer protection act into the Butler tort. We find that is inconsistent with the insurer's obligation to resolve every doubt in favor of the insured, not itself, and therefore decline to do so.
[6] We agree with the courts below that summary judgment was properly granted to Alea on Café Arizona's consumer protection act claims and claims based on alleged violations of Washington insurance code violations. Café Arizona simply did not come forward with sufficient evidence to raise a factual issue.
[1] "Café Arizona" refers collectively to all the respondents in this case.