**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 03 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| X2 BIOSYSTEMS, INC, a Washington corporation, Plaintiff-Appellant, v. FEDERAL INSURANCE COMPANY, an Indiana insurance company, Defendant-Appellee. | No.   14-35125 D.C. 2:13-cv-01653-MJP MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted July 6, 2016
Seattle, Washington

Before:     TASHIMA, McKEOWN, and M. SMITH, Circuit Judges.

X2 Biosystems, Inc. ("X2") appeals the district court's order granting

Federal Insurance Co.'s ("Federal") motion to dismiss.  We have jurisdiction under

28 U.S.C. § 1291, and we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

X2 manufactures products that detect sports-related brain injuries. In 2011, X2 entered into a Technology License Agreement ("TLA") with Bite Tech, Inc., granting Bite Tech licenses to certain X2 technology. As partial consideration, the TLA required Bite Tech to pay X2 $2 million in advance royalties. After receiving the $2 million in royalties, X2 terminated the TLA. X2 never sold any products that would generate revenues for Bite Tech.

Bite Tech alleged seven causes of action against X2, two of which (breach of special relationship and conversion) are relevant to this appeal. X2 tendered defense of the action to Federal, its insurer. Federal refused to defend, asserting that Bite Tech's claims fell within an exclusion in the insurance policy pertaining to claims based on, arising from, or resulting from X2's liability under any contract. According to Federal, Bite Tech's claims were based on X2's contractual liability under the TLA.

X2 brought a declaratory judgment action against Federal under Washington law, claiming that Federal had breached its duty to defend X2 in bad faith. Federal moved to dismiss, and X2 moved for partial summary judgment. The district court granted Federal's motion, denied X2's motion, and dismissed X2's complaint with prejudice. The court reasoned that X2's alleged breach of the TLA gave rise to both contested causes of action; thus, that the claims fell under the contractual

2

liability exclusion of the policy. X2 appeals, contending that (1) Federal was not excused from defending X2 under the exclusion, and (2) Federal's refusal to defend was in bad faith.

**1.** We review a district court's ruling on a motion to dismiss *de novo*. *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012) (citing *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 975–76 (9th Cir. 2012)). We "accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff." *Id.*

We also review a district court's ruling on a cross-motion for summary judgment *de novo*. *See Trunk v. City of San Diego*, 629 F.3d 1099, 1105 (9th Cir. 2011). We "'must determine, viewing the evidence in the light most favorable to . . . the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the [relevant] substantive law.'" *Id.* (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (alteration in original)).

When interpreting an insurance policy under Washington law, we must "consider [it] as a whole, and . . . give it a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash.

2005) (en banc) (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000) (en banc)). "[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists." *Id.* A provision in an insurance policy is ambiguous if, "on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (quoting *Weyerhaeuser Co.*, 15 P.3d at 122).

**2.** An insurance company's "duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 281–82 (Wash. 2002) (en banc) (quoting *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999)). If an insurer breaches his duty to defend, and the breach is "unreasonable, frivolous, or unfounded," the insurer has acted in bad faith. *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 700 (Wash. 2010) (en banc).

The contractual liability exclusion in X2's insurance policy reads in relevant part as follows:

> No coverage will be available under Insuring Clause (C) for any **Insured Organization Claim**:
> . . .

(2) based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement.

In its complaint, Bite Tech alleged that, "[b]y entering the [TLA]," Bite Tech developed a special relationship with X2, which in turn gave rise to X2's purported duty to disclose that it intended to terminate the TLA. Thus, according to Bite Tech's allegations, the duty that X2 breached was not independent from its contractual liability. Rather, the duty to disclose arose from or was a consequence of X2's contractual liability under the TLA. In other words, X2's alleged breach of the TLA gave rise to the breach of special relationship claim because the claim is based on X2's failure to disclose its intent to terminate the TLA while continuing to collect advance royalty payments from Bite Tech. Further, X2 would not have been liable in the absence of the contract because X2's purported duty to disclose stemmed from X2's special relationship with Bite Tech, which, itself, arose out of the TLA.

Similarly, in its conversion claim, Bite Tech alleged that X2 wrongfully received and retained the advance royalty payments under the TLA. The TLA required these royalty payments to X2 as partial consideration for X2's licenses. Bite Tech alleged that X2's acceptance of the payments was wrongful because X2

5

intended to terminate the TLA before it could generate revenues for Bite Tech. The claim is thus closely tied to X2's performance under, and subsequent termination of, the TLA. It was X2's premature termination of the TLA that gave rise to the conversion allegation. Accordingly, the conversion claim cannot fairly be said to be independent from X2's contractual liability.

Because Bite Tech's claims against X2 depended on X2's rights and obligations under the TLA, the claims fell squarely within the insurance policy's contractual liability exclusion; thus, Federal did not have a duty to defend the Bite Tech action. Finally, because Federal did not have a duty to defend, it did not breach this duty in bad faith. *See Am. Best Food, Inc.*, 229 P.3d at 700.

**AFFIRMED.**

6