# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMERICAN STATES INSURANCE, COMPANY, an Indiana corporation, | DIVISION ONE |
| Respondent, | No. 69634-3-I |
| v. | |
| DELEAN'S TILE AND MARBLE, LLC, a Washington limited liability company; DELEAN CONTRACTING & LANDSCAPING, LLC, a Washington limited liability company; TABITA DELEAN dba DELEAN'S TILE AND MARBLE, a Washington sole proprietorship; MIRCEA and TABITA DELEAN, individually and dba DELEAN'S TILE & MARBLE, a Washington sole proprietorship; and LAWLESS CONSTRUCTION CORPORATION, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Appellants. | FILED: December 9, 2013 |

DWYER, J. — Six townhouse unit owners entered into a construction contract with Lawless Construction Corporation, Inc. (Lawless). The owners hired Lawless to repair construction deficiencies at their property that had been caused by the original developer. Lawless then subcontracted with Delean's Tile & Marble, LLC (Delean) to assist in repairing some of the damage. Delean was insured by American States Insurance Company at the time and Lawless was

made an additional insured under Delean's policy. Some of Delean's work was defective and when Delean refused to return and fix the defective work, Lawless paid another company to repair and complete the work. Subsequently, Lawless brought a lawsuit against Delean. Lawless and Delean eventually settled their dispute. In the meantime, Lawless had tendered a claim to American States, but American States denied coverage pursuant to its Multi-Unit and Tract Housing Residential Exclusion (hereinafter Exclusion). Thereafter, American States filed a declaratory judgment action against Lawless and Delean, seeking a ruling on coverage. The trial court denied Lawless's and Delean's motion for partial summary judgment, granted American States' motion for summary judgment, and ruled, among other things, that the Exclusion precluded coverage for the claim submitted by Lawless and Delean. Because the work Delean performed falls within the plain language of the Exclusion, we affirm.

I

The property at issue was designed, permitted, and built between 2001 and 2002 as "three duplex townhouses with underground parking." It is located in Seattle at 125-127-129 26th Avenue East. A soils report prepared for the developer in 2001 stated that "the multi unit residential construction will consist of three, three-story buildings joined by courtyards."

In the building permit, each duplex townhouse building was listed as a "two-family dwelling." Each duplex townhouse has continuous siding, a common roof, and a continuous guttering system. Pedestrian access to all six units is available using the public sidewalk on 26th Avenue East, and the stairway leads

into the inner courtyard area. The inner courtyard area between the three buildings consists of connected walkways and stairways used by all owners. Each unit has one entrance, accessible by traversing the common courtyard walkways. When the property owners exit their front doors, they access the garage via a stairway from the courtyard area. The garage area is located underneath the building bearing the address 125 26th Avenue East and it has a continuous span of siding shared with the upper portions of the building above it.

On August 25, 2003, the City of Seattle approved a subdivision of the property into seven parcels, denominated Parcels A to G. The six townhouse units occupy Parcels A to F. The subdivision's stated purpose, pursuant to the short plat for the property, was "for the creation of separate lots of record for the construction and transfer of title of townhouse as authorized under SMC 23.45.006." A Declaration of Covenants, Conditions, Restrictions and Easements, and Party Wall Agreement (hereinafter CC&Rs) applicable to all six parcels was recorded in 2003. The CC&Rs refer to Parcels A through F collectively as the "Property." The CC&Rs establish easements for walkways, parking, shared storage space, utilities, ingress and egress, mailboxes, and state that all six parcels are equally responsible for sharing the costs of maintaining the easement areas. The CC&Rs prohibit owners from making improvements, alterations, repairs, paint changes, excavations, changes in grade, or other work which alters the exterior of "any Parcel or the Structures located thereon . . . without the prior written approval of three-fourths (3/4) of the Owners . . . ." Additionally, the CC&Rs prohibit structural alteration of any party walls—the party

walls are walls that were built as part of the original construction and placed on the dividing line between the parcels.

The original construction of the walkways was defective, and the owners of all six units sued the builder. The owners hired Lawless to repair the defective work. Although the contract identified "Homeowners Association" as the party contracting with Lawless, all of the owners signed the contract individually. The scope of repair under the contract included the main courtyard, the six east elevation unit decks, the garage, the storage rooms, and the staircase to the garage.

On August 8, 2006, Lawless subcontracted with Delean to assist in repairing the damage. Delean's work included the following: tile work in the deck areas, courtyard areas, easement areas, and the staircase to the common garage; lapping membranes against the siding of the building walls; and waterproofing the penetrations from the buildings' downspouts.

Delean's work on the exterior walkways was defective, allowing water to leak into the garage. This, in turn, resulted in rot to the joists, sheathing, and drywall in the garage. The owners demanded that Lawless return and repair the damage. Lawless, in turn, asked Delean to repair the shoddy work. Delean refused to do so.

Delean's contract with Lawless required Delean to buy insurance, to make Lawless an additional insured under his liability insurance policy, and to indemnify and hold Lawless harmless for claims arising from Delean's performance. Delean was insured by American States Insurance Company at

the time and Lawless was listed as an additional insured under Delean's policy

pursuant to the subcontract. Delean's policy includes a severability clause:

**7. Separation Of Insured**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part fo [sic] the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and
**b.** Separately to each insured against whom claim is made or "suit" is brought.

The policy also excludes coverage for property damage arising out of any

"construction operations" that involve a "multi-unit residential building." The

Exclusion provides, in pertinent part, as follows:

**2. Exclusions**

This insurance does not apply to:

**Multi-Unit and Tract Housing**

"Bodily injury", "property damage" or "personal and advertising injury liability" arising out of any "construction operations" whether ongoing operations or operations included within the products-completed operations hazard that involve a "housing tract" or "multi-unit residential building".

This exclusion does not apply to:

    **a.** Remodeling, maintenance or repair performed for the "owner" of a detached single family dwelling provided that the work does not involve the repair or replacement of either "your work", or the work of any other insured under this policy, that was part of the original construction of the building . . . .

**B.** The following definitions are added to the **Definitions** Section:

"Construction operations" means pre-construction, construction, post-construction, reconstruction, renovation, remodeling, conversion of the building to a condominium, townhouse,

cooperative building or any other type of multiple unit residential structure, maintenance or repair.

"Multi-unit residential building" means condominiums, townhouses, apartments, dormitories or similar structures that have more than four (4) units built or used for the purpose of residential occupancy, at the same location or complex, regardless of the number of buildings.

"Owner" means the person or persons that own the individual residential dwelling or unit but does not include a limited liability company, sole proprietor, partnership, joint venture, corporation, unincorporated association, trust, or the developer of the property or real estate manager or any entity related to either.

On September 16, 2010, Lawless's attorney asked Delean to tender a claim on its behalf to American States as an additional insured under Delean's policy. On September 22, 2010, American States' claim representative checked online permit records of the City of Seattle's Department of Planning and Development and confirmed that the development at issue involved "three duplex townhouses with underground parking." She then wrote to Lawless's attorney formally denying the tender. The letter stated, in pertinent part, "A review of the public records for this project reveals that this project is a condominium[1] comprised of 6 units in 3 buildings. . . . [T]his project fits the definition of Multi-Unit Residential Building and thus this exclusion would further preclude coverage for this matter." American States' claim representative also invited Lawless's attorney to submit documentation that might materially alter American States' coverage position; however, Lawless's attorney did not submit any such documentation.

---

[1] Neither the parties nor the developer contend on appeal that the project is a condominium.

- 6 -

Lawless contracted with Umbrella Construction Company to repair Delean's defective work and the property damage caused by the defective work. Lawless then filed suit against Delean. Lawless's claimed damages against Delean, including attorney fees, totaled $174,198.91. American States provided Delean with a defense under a reservation of rights and defended Delean throughout the litigation, including Delean's entry into a stipulated covenant judgment settlement with Lawless and the entry of judgment against Delean in the amount of $151,553.05.

Thereafter, on December 9, 2011, American States filed a declaratory judgment action against Lawless and Delean, seeking a ruling on coverage. Subsequently, all parties moved for summary judgment. The trial court denied Lawless's and Delean's motion for partial summary judgment and granted American States' motion for summary judgment. The summary judgment order incorporated four rulings: (1) the Exclusion eliminated coverage for fees, costs, and damages claimed by the townhouse owners; (2) Delean's policy did not provide coverage with respect to the April 2, 2012 judgment Lawless obtained against Delean; (3) American States had no duty to reimburse Lawless with respect to expenses it incurred in repairing Delean's defective work; and (4) American States had no contractual duty to defend Lawless under the policy with respect to requests from the homeowners for Lawless to repair Delean's defective work. The trial court subsequently granted Lawless's motion to voluntarily dismiss its counterclaims for breach of contract and bad faith.

Lawless and Delean appeal, assigning error to the trial court's grant of

summary judgment in favor of American States and its denial of their motion for partial summary judgment.

II

Lawless and Delean assert that the trial court erred when it ruled that the Exclusion eliminated coverage for Delean's work on the property at issue.[2] This is so, they aver, because Delean's work did not fall within the Exclusion's clear language and because Exception a. to the Exclusion prevents its application to the work performed by Delean. We disagree.

We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Familiar principles apply to our analysis. We construe insurance policies as contracts. Am. Nat'l Fire Ins. Co. v. B&L Trucking and Constr. Co., 134 Wn.2d 413, 427, 951 P.2d 250 (1998). Policies should be construed as a whole, and "'should be given a fair, reasonable, and sensible construction as would be

---

[2] American States contends on appeal that we should conduct our coverage analysis for Lawless and Delean jointly. This is so, it reasons, because the Exclusion contains an inclusive term—rather than a restrictive term—that has, in other cases, led to the insureds being treated jointly. We disagree. Although the Exclusion does contain an inclusive term, the inclusive term is unrelated to the question of severability and, thus, the policy's severability clause is dispositive.

Although we analyze coverage for multiple insureds separately when an exclusion refers to "the insured," we analyze coverage jointly when an exclusion refers to "any insured." Compare Unigard Mut. Ins. Co v. Spokane Sch. Dist. No. 81, 20 Wn. App. 261, 266, 579 P.2d 1015 (1978), abrogated on other grounds by, Rodriguez v. Williams, 107 Wn.2d 381, 385-88, 729 P.2d 627 (1986), with Caroff v. Farmers Ins. Co. of Wash., 155 Wn. App. 724, 731-32, 261 P.3d 159 (1999). American States contends that the phrase "any construction operations" compels us to apply Caroff, disregard the severability clause in the contract, and treat the insureds jointly. Because the word "any" does not modify the word "insured," we decline to do so.

given to the contract by the average person purchasing insurance.'" Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95, 776 P.2d 123 (1989) (quoting Sears v. Grange Ins. Ass'n, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988), overruled on other grounds by Butzberger v. Foster, 151 Wn.2d 396, 89 P.3d 689 (2004)). "Courts interpreting insurance policies are bound by definitions provided therein." Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co., 147 Wn. App. 758, 766, 198 P.3d 514 (2008). Where the policy's language does not provide coverage, we may not rewrite the policy to do so. Brosseau, 113 Wn.2d at 100. Finally, "exclusionary clauses are to be most strictly construed against the insurer." Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 68, 659 P.2d 509 (1983), opinion adhered to as modified on reconsideration by 101 Wn.2d 830, 683, P.2d 186 (1984).

The Exclusion reads, in pertinent part, as follows: "This insurance does not apply to: . . .'property damage' . . . arising out of any 'construction operations' . . . that involve a . . . 'multi-unit residential building.'" Exception a. to the Exclusion reads, in pertinent part, as follows: "This exclusion does not apply to: Remodeling, maintenance or repair performed for the 'owner' of a detached single family dwelling . . . ." The three key phrases to examine from the Exclusion and the Exception are the following: (1) "arising out of any 'construction operations,'" (2) "involve a . . . 'multi-unit residential building,'" and (3) "detached single family dwelling."

Lawless and Delean first contend that the claim against Delean did not "arise out of construction operations." This is so, they assert, because the

- 9 -

activity giving rise to the claim was Delean's work outside the residential structure and on the exterior walkways. Their contention lacks merit.

"Construction operations" is defined as "pre-construction, construction, post-construction, reconstruction, renovation, remodeling, *conversion of the building to a condominium, townhouse, cooperative building or any other type of multiple unit residential structure*, maintenance or repair." (Emphasis added.) Lawless and Delean selectively cull the phrase "any other type of multiple unit residential structure" from the definition and then use it to contend that because Delean's work was performed on the exterior walkways—not literally *on* a residential structure—the Exclusion does not apply. This is a gross misreading of the definition.

Properly read, the definition captures "conversion of the building to . . . any other type of multiple unit residential structure." Thus, the phrase "any other type of multiple unit residential structure" would only be relevant if Delean's work involved a "conversion" of the property to some other type of structure. However, Lawless and Delean do not claim that Delean was converting[3] the buildings to a different type of structure, and the record does not support such an assertion. Indeed, the work that Delean performed could properly be characterized as "construction," "reconstruction," "remodeling," "maintenance," or "repair"—but not "conversion." None of these activities, pursuant to the definition, require the work to be done on a residential structure. Accordingly,

---

[3] In fact, Lawless and Delean, in contending that Exception a. to the Exclusion applies, impliedly assert that the work involved "remodeling, maintenance, or repair" as those three are the only actions that would make Exception a. applicable.

Lawless and Delean are incorrect insofar as they assert that Delean's work had to be performed on a residential structure in order for the Exclusion to apply.

Lawless and Delean next contend that Delean's work did not "involve . . . a multi-unit residential building." This is so, they reason, because his work only touched four of the units. Their contention lacks merit. The Exclusion is not worded so narrowly as to require the work to "touch" more than four units.

As defined by the policy, "'[m]ulti-unit residential building' means condominiums, townhouses, apartments, dormitories or similar structures that have more than four (4) units built or used for the purpose of residential occupancy, at the same location or complex, regardless of the number of buildings." In an effort to avoid the Exclusion, Lawless and Delean assert that Delean's work had to touch more than four units. However, the relevant inquiry, as evidenced by the policy's plain language, is whether or not the construction operations *involved* a complex that meets the definition of "multi-unit residential building"—not the location at the complex where the work occurred. It is clear that Delean's construction operations did involve a complex that meets this definition: these units were townhouses, there were more than four units, they were built for the purpose of residential occupancy, and they were built at the same complex.

Lawless and Delean finally contend that Exception a. to the Exclusion makes the Exclusion inapplicable. This is so, they reason, because none of the units share a wall with another unit and none of the buildings share a wall with another building. Again, their contention lacks merit.

- 11 -

Our analysis is again guided by familiar principles. Undefined terms in insurance policies are assigned their ordinary meaning. Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 512, 276 P.3d 300 (2012). "If a term in a policy is undefined, courts may look to the dictionary to determine the common meaning." Black v. Nat'l Merit Ins. Co., 154 Wn. App. 674, 680, 226 P.3d 175 (2010). "However, to be meaningful, dictionary definitions must be regarded in the context of the particular insurance policy." Black, 154 Wn. App. at 680. "'The contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms.'" Black, 154 Wn. App. at 682 (quoting Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 434, 545 P.2d 1193 (1976)).

Exception a. reads as follows:

This exclusion does not apply to:

> **a.** Remodeling, maintenance or repair performed for the "owner" of a *detached single family dwelling* provided that the work does not involve the repair or replacement of either "your work", or the work of any other insured under this policy, that was part of the original construction of the building . . . .

(Emphasis added.)

Both parties are mistaken in trying to assign a legal meaning to the word "detached." Webster's defines "detached" as follows: "1: standing by itself: separate, unconnected, isolated; *specif.* not sharing any wall with another building." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 615 (2002). American States is incorrect in its contention that the presence of a party wall

- 12 -

which cannot be altered legally binds the units; Lawless and Delean are incorrect in their contention that the one inch air space between the inner walls of the buildings legally separates the units. These arguments treat "detached" as a legal term of art, yet it is not defined in the policy and it does not carry with it an accepted legal meaning. However, a practical and reasonable interpretation of the dictionary definition is that these units and buildings are not "detached" as that word is commonly understood and in the context of this particular policy.

The *units* within the townhouse buildings are not detached from each other because they have continuous siding, a continuous guttering system, a common roof, and appear to be part of a single building. Notwithstanding the one inch air space between the units, a practical interpretation of the term "detached" suggests that the units be noticeably separate from one another, and these are not.

The townhouse *buildings*, on the other hand, are noticeably separate from one another; however, the townhouse buildings are not "single family dwellings." Instead, they are duplexes, comprising two units that are part of the same building. The effect of this is to render the detached state of the buildings inconsequential in determining whether Exception a. applies. The Exclusion's plain language already forecloses coverage for duplex townhouses and Exception a. does not alter that language.

Ultimately, for Exception a. to apply, Delean's work must have been performed on a "detached single family dwelling." Although the units are single family dwellings, they are not detached from the corresponding unit in each

- 13 -

duplex townhouse, and although the buildings are detached, they do not constitute single family dwellings because each one contains two units. Accordingly, Exception a. to the Exclusion does not render the Exclusion inapplicable.

Affirmed.[4]

We concur:

Dwyer, J.

Spearman, A.C.J

Becker, J.

---

[4] Because Lawless and Delean conceded their claim for attorney fees at oral argument, we do not address it here.