
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ZHAOYUN XIA, a single person;
ISSAQUAH HIGHLANDS 48, LLC, a
Washington limited liability company;
ISSAQUAH HIGHLANDS 50, LLC, a
Washington limited liability company;
GOTTLIEB ISSAQUAH HIGHLANDS 48,
LLC, a Washington limited liability
company; and GOTTLIEB ISSAQUAH
HIGHLANDS 50, LLC, a Washington
limited liability company,

        Appellants/
        Cross Respondents,

        v.

PROBUILDERS SPECIALTY
INSURANCE COMPANY, RRG, a
foreign insurance company authorized to
conduct business within the state of
Washington; OLYMPIC ADVANTAGE,
INC., a Washington corporation;
TREACY DUERFELDT and JANE DOE
DUERFELDT, husband and wife, and the
marital community composed thereof;
LAMBIN INSURANCE SERVICES, INC.,
a Nevada corporation doing business in
the state of Washington; FLYING EAGLE
INSURANCE SERVICES, INC., a
Nevada corporation licensed to do
business in the state of Washington; and
DAVID W. LAMBIN and JANE DOE
LAMBIN, husband and wife, and the
marital community composed thereof,

        Respondents/
        Cross Appellants.

No. 71951-3-I

DIVISION ONE

UNPUBLISHED

FILED: August 24, 2015

Cox, J. — Zhaoyun Xia appeals the summary judgment order in favor of ProBuilders Specialty Insurance Company that also denies her motion for summary judgment and dismisses this action. There are no genuine issues of material fact whether ProBuilders, the insurer, had a duty to defend under the pollution exclusion of the policy of insurance applicable to Xia's claim against Issaquah Highlands 48, LLC, the named insured, and related entities (collectively "Issaquah Highlands"). ProBuilders had no duty to defend and was entitled to judgment as a matter of law. But there are genuine issues of material fact regarding Xia's Consumer Protection Act and Insurance Fair Conduct Act claims against ProBuilders. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

Issaquah Highlands 48, LLC was the general contractor of the "Villaggio TownHomes" a housing development in Issaquah. It purchased a $1,000,000 general liability insurance policy for the development from ProBuilders. The policy term was from July 7, 2005 to July 7, 2006.

In May 2006, Xia purchased one of the homes at the Villaggio TownHomes. After moving in, she began experiencing dizziness, fatigue, limb numbness, and other symptoms. She was diagnosed as suffering from carbon monoxide poisoning. The Social Security Administration later determined that she was disabled. In December 2006, Puget Sound Energy determined that toxic levels of carbon monoxide were leaking within her home from a gas water heater. The exhaust vent of the water heater was never connected to an exterior vent.

2

In June 2007, Xia informed Issaquah Highlands, in writing, of her claim based on her carbon monoxide poisoning. Issaquah Highlands forwarded her letter to its insurance broker. The broker submitted the claim to the claims administrator for ProBuilders, NBIS Claims & Risk Management, Inc., in July 2007.

By letter dated January 17, 2008, NBIS notified Issaquah Highlands that ProBuilders "w[ould] neither defend nor indemnify" it and "any judgment or settlement obtained by [Xia] predicated upon damages that fall outside the [policy]" would be the responsibility of Issaquah Highlands.[1] By letter dated June 12, 2008, NBIS also notified counsel for Xia that ProBuilders "will neither defend nor indemnify" Issaquah Highlands in language and scope virtually identical to the January 17, 2008 letter to the insured.[2]

In January 2009, Xia commenced a personal injury action against Issaquah Highlands 48, LLC and others. In that action, she claimed damages for injuries caused by her carbon monoxide poisoning. Xia sent a courtesy copy of the pleadings to NBIS, the agent for ProBuilders.

In December 2010, Xia notified ProBuilders through its agent NBIS that she planned to enter into a settlement with Issaquah Highlands in her personal injury action. The letter also stated that if they did not receive written correspondence within 30 days stating that ProBuilders would provide coverage

---

[1] Clerk's Papers at 285.

[2] Id. at 292.

3

and defend Issaquah Highlands, she would have no option but to enter into the settlement.

Thereafter, Xia entered into a settlement agreement with Issaquah Highlands in the amount of $2,000,000. The agreement provided that Xia would take an assignment of Issaquah Highlands' rights against ProBuilders, its insurer. In exchange, Xia covenanted not to execute a judgment against Issaquah Highlands.

Xia gave ProBuilders notice of the motion for determination of reasonableness of the settlement. ProBuilders elected not to attend the hearing.

The trial court found the settlement agreement to be reasonable. It entered judgment against Issaquah Highlands in favor of Xia in the amount of $2,000,000.

In May 2011, Xia, as assignee of Issaquah Highlands, sent NBIS and ProBuilders a 20-day notice of intent to commence Insurance Fair Conduct Act litigation. Later that month, ProBuilders, through its agent NBIS, reiterated in writing its prior statements of position that it would neither defend nor indemnify on the asserted basis that Xia's claim was not covered by the policy.

Xia commenced this action against ProBuilders. She asserted claims of breach of the insurance contract, bad faith, and violations of the Consumer Protection Act (CPA) and the Insurance Fair Conduct Act (IFCA). She sought a declaratory judgment that ProBuilders had a duty under the policy to defend and indemnify its insured in connection with her personal injury action.

Following cross-motions for summary judgment, the trial court orally granted ProBuilders' motion. Sometime later, following Xia's motion for reconsideration, the court entered its summary judgment order in favor of ProBuilders. The order also denied Xia's motion for summary judgment and dismissed this action.

Xia appeals. ProBuilders cross-appeals the trial court's denial of its summary judgment motion that the pollution exclusion provision of its policy barred coverage.

## DUTY TO DEFEND

Xia argues that the trial court erred by granting summary judgment to ProBuilders, denying her motion, and dismissing this case. She claims that ProBuilders had a duty to defend its insured against her personal injury claim. We hold that there were no genuine issues of material fact regarding the insurer's duty to defend under the pollution exclusion provision. ProBuilders was entitled to judgment as a matter of law.

"The standard of review of an order of summary judgment is de novo."[3] The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[4] Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving

---

[3] Smith v. Safeco Ins. Co., 150 Wn.2d 478, 483, 78 P.3d 1274 (2003).

[4] Graff v. Allstate Ins. Co., 113 Wn. App. 799, 802, 54 P.3d 1266 (2002).

party is entitled to judgment as a matter of law.[5] A "material fact" is a fact upon which the outcome of the litigation depends, in whole or in part.[6]

"Language in an insurance policy is interpreted as a matter of law, and construction of that language is reviewed de novo."[7] "'In construing the language of an insurance policy, the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'"[8] Where terms are undefined, they "'must be given their plain, ordinary, and popular meaning.'"[9] In determining this meaning, a court may look to standard English dictionaries.[10]

Exclusions are interpreted narrowly.[11] They "'are to be most strictly construed against the insurer.'"[12]

---

[5] CR 56(c).

[6] Barber v. Bankers Life & Cas. Co., 81 Wn.2d 140, 144, 500 P.2d 88 (1972).

[7] Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 802, 329 P.3d 59 (2014).

[8] Tyrrell v. Farmers Ins. Co. of Wash., 140 Wn.2d 129, 133, 994 P.2d 833 (2000) (quoting Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 682, 801 P.2d 207 (1990)).

[9] Id. (internal quotation marks omitted) (quoting Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998)).

[10] Id.

[11] Am. Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 413, 229 P.3d 693 (2010).

[12] Id. at 406 (quoting Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 68, 659 P.2d 509 (1983)).

The duty to defend is one of the main benefits of the insurance contract.[13] The duty to defend is different from and broader than the duty to indemnify.[14] The duty to indemnify exists only if the policy "actually covers" the insured's liability.[15] The duty to defend is triggered if the insurance policy "conceivably covers" allegations in the complaint.[16]

"'The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'"[17] "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend."[18] If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend.[19] "In deciding whether to defend, an insurer may not put its own interest above that of its insured."[20]

---

[13] Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 751, 760, 58 P.3d 276 (2002).

[14] Am. Best Food, Inc., 168 Wn.2d at 404.

[15] Id. (emphasis omitted).

[16] Id. (emphasis omitted).

[17] Id. (internal quotation marks omitted) (quoting Truck Ins. Exch., 147 Wn.2d at 760).

[18] Id. at 405.

[19] Truck Ins. Exch., 147 Wn.2d at 760.

[20] Am. Best Food, Inc., 168 Wn.2d at 414.

"An insurer is relieved of its duty to defend only if the claim alleged in the complaint is 'clearly not covered by the policy.'"[21] "Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination."[22] "When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action."[23]

The duty to defend is generally determined from the "eight corners" of the insurance contract and the underlying complaint.[24] There are two exceptions to this rule and both favor the insured.[25] First, if it is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt.[26] Second, if allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered.[27] But "extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty."[28]

---

[21] Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 60, 164 P.3d 454 (2007) (quoting Truck Ins. Exch., 147 Wn.2d at 760).

[22] Truck Ins. Exch., 147 Wn.2d at 761.

[23] Am. Best Food, Inc., 168 Wn.2d at 405.

[24] Expedia, Inc., 180 Wn.2d at 803.

[25] Id.

[26] Id.

[27] Id. at 803-04.

[28] Id. at 804.

In its summary judgment order, the trial court granted summary judgment to ProBuilders on two bases. First, because Xia's home fell within the "townhouse exclusion" in the insurance contract. Second, because Issaquah Highlands did not request ProBuilders to defend it from Xia's lawsuit. The trial court declined to grant relief based on ProBuilders' argument that the "pollution exclusion" of its policy also barred coverage of Xia's claim.

*Pollution Exclusion*

We first consider whether the trial court erred by denying Xia's motion for summary judgment that the "pollution exclusion" was inapplicable as a matter of law.[29]

The controlling question is whether it is clear from examining the face of the complaint and the insurance policy that the policy does not provide coverage.[30] We conclude by examining both that the pollution exclusion clearly excludes coverage for Xia's claim. Accordingly, there was no duty to defend. The court properly denied summary judgment to Xia on this alternative basis.

The "pollution exclusion" excludes from coverage:

> **Bodily injury**, property damage, or **personal injury** caused by, resulting from, attributable to, contributed to, or aggravated by the **actual**, alleged or threatened discharge, dispersal, seepage, migration, **release or escape of pollutants**, or from the presence of, or exposure to, pollution of any form whatsoever, and regardless of the cause of the pollution or pollutants.
>
> This Exclusion applies regardless of the cause of the pollution and whether any other cause of said bodily injury, property damage, or personal injury acted jointly, concurrently or in any

---

[29] Brief of Appellant at 34-35.

[30] See Expedia, Inc., 180 Wn.2d at 803.

sequence with said pollutants or pollution. This Exclusion applies whether any other cause of the bodily injury, property damage, or personal injury would otherwise be covered under this insurance.

. . .[31]

The policy defines "pollutant" as:

[A]ny solid, liquid, *gaseous* or thermal irritants or contaminants, which include but are not limited to smoke, vapor, soot, *fumes*, acids, alkalis, chemicals, waste, biological elements and agents, and intangibles such as noise, light and visual esthetics, the presence of any or all of which *adversely affects human health* or welfare, unfavorably alters ecological balances or degrades the vitality of the environment for esthetic, cultural or historical purposes, whether such substances would be or are deemed or thought to be toxic, and whether such substances are naturally occurring or otherwise.

. . .

Pollution as used herein means any form of pollutant which forms the basis for liability, whether the pollution is said to cause physical injury or not, which by volume or timing or any other factor is said to give rise to liability.[32]

In her amended complaint in her personal injury action against Issaquah Highlands, Xia alleged that upon moving into her home she "began to feel ill and started to experience unusual symptoms."[33] She also alleged:

On December 8, 2006, Puget Sound Energy found an indoor leak of Carbon Monoxide into Ms. Xia's town home.

Puget Sound Energy discovered that the exhaust hose for Ms. Xia's hot water tank had never been connected and thus was allowing carbon monoxide to flow freely into Ms. Xia's town home.[34]

---

[31] Clerk's Papers at 375 (emphasis added) (emphasis omitted).

[32] Id. at 389 (emphasis added) (emphasis omitted).

[33] Id. at 83.

[34] Id.

10

She further alleged cognitive impairment and other bodily injuries caused by exposure to carbon monoxide.

We note that these allegations in Xia's personal injury action mirror those in the recitation of "Facts" in the January 17, 2008 letter in which ProBuilders declined to either defend or indemnify its insured. Specifically, there was no material change of facts between ProBuilders' decision to deny a defense before the action and the action that followed.

It is clear from the definition in the policy that carbon monoxide is a "pollutant." It is a gas and these fumes escaped from the hot water heater, adversely affecting Xia's health. Moreover, this gas was toxic, at the levels of exposure in this case. Thus, Xia's allegations fall within the plain language of this exclusion.

Moreover, the policy twice expressly states that the exclusion applies "regardless of the cause of the pollution."[35] And it expressly states that the exclusion applies "whether any other cause of said bodily injury . . . acted jointly, concurrently or in any sequence with said pollutants."[36] It also expressly states that it applies "whether any other cause of the bodily injury . . . would otherwise be covered under this insurance."[37] Thus, even if the negligence of the installer of the water heater was a cause of the pollution or Xia's injuries, such underlying negligence is immaterial to the application of this exclusion.

---

[35] Id. at 375.

[36] Id.

[37] Id.

Accordingly, liberally construing the allegations of Xia's amended complaint in her personal injury action does not show facts that could, if proven, impose liability upon the named insured within the policy's coverage.

Heavily relying on Kent Farms, Inc. v. Zurich Insurance Co.,[38] Xia argues that her underlying cause of action is rooted in negligence, not the release of pollutants.[39] According to her, whether an exclusion applies is necessarily a fact-specific inquiry.[40] And she claims the trial court erred in refusing on summary judgment "to resolve the ambiguity in the pollution exclusion in favor of coverage."[41]

We see no ambiguity in the pollution exclusion provision of this policy for reasons we have already discussed. We conclude that an insured would reasonably read the policy in the same way we do.

Xia's claim that her cause of action is rooted in negligence does not help her. As we observed earlier in this opinion, the plain language of the policy states that the exclusion applies "regardless of the cause of the pollution and whether any other cause of said bodily injury . . . acted jointly, concurrently or in any sequence with said pollutants."[42] Regardless of her characterization of "the cause," this wording makes clear that the existence of other causes is immaterial.

---

[38] 140 Wn.2d 396, 998 P.2d 292 (2000).

[39] Brief of Appellant at 36-40.

[40] Id. at 36, 40.

[41] Id. at 40.

[42] Clerk's Papers at 375.

The essence of Xia's argument is that <u>Kent Farms</u> controls this case, not <u>Quadrant Corp. v. American States Insurance Co.</u>[43] After a careful review of these authorities, we also conclude that <u>Quadrant</u> dictates that the pollution exclusion provision in this policy bars coverage of Xia's claim.

In <u>Quadrant</u>, the supreme court held that a pollution exclusion provision applied to preclude coverage for claims for injuries caused by fumes from waterproofing material that entered the plaintiff's apartment building.[44] In doing so, the court reaffirmed the continuing validity of <u>Cook v. Evanson</u>, a decision from this court.[45] <u>Cook</u> involved fumes from a sealant applied by a contractor.[46] The contractor failed to properly seal off the fresh air intake, and fumes were drawn into the building, injuring the occupants.[47]

The <u>Quadrant</u> court first rejected the plaintiff's argument that absolute pollution exclusions apply only to environmental harms, not personal injuries arising from ordinary negligence.[48] It stated that "a majority of courts has concluded that absolute pollution exclusions unambiguously exclude coverage for damages caused by the release of toxic fumes."[49]

---

[43] 154 Wn.2d 165, 110 P.3d 733 (2005).

[44] <u>Id.</u> at 167.

[45] <u>Id.</u> (citing <u>Cook v. Evanson</u>, 83 Wn. App. 149, 920 P.2d 1223 (1996), <u>review denied</u>, 131 Wn.2d 1016 (1997)).

[46] <u>Cook</u>, 83 Wn. App. at 151.

[47] <u>Id.</u>

[48] 154 Wn.2d at 173-74.

[49] <u>Id.</u> at 173.

The court then examined what it called "Absolute Pollution Exclusions in Washington."[50] It started with this court's decision in Cook and traced the line of cases that followed.[51] When it reached Kent Farms, the court noted that the decision in that case did not mention this court's decision in Cook.[52] In applying the pollution exclusion provision in Quadrant, the court noted that this court's holding in Cook was based on the underlying injury and cause of action being primarily the result of the toxic character of the pollutant.[53]

The supreme court also noted that the "fumes" cases were factually distinguishable from Kent Farms.[54] Thus, it stated, "[W]hen fumes caused injury and where the pollutant was being used as it was intended," the Cook reasoning controls.[55]

Accordingly, the Quadrant court concluded that the pollution exclusion applied to bar coverage.[56] The tenant in the apartment building was injured by fumes coming from toxic water proofing material that was being used as intended outside the building.[57] The air in the tenant's apartment was "polluted" when the

---

[50] Id. at 174.

[51] Id. at 174-79.

[52] Id. at 178.

[53] Id. at 179.

[54] Id.

[55] Id.

[56] Id.

[57] Id.

fumes entered the building because the contractor had not properly vented the area where the toxic material was drying.[58]

The present case most closely resembles Quadrant. Here, Xia was injured by fumes from toxic levels of carbon monoxide coming from the improperly vented gas water heater in her home. The carbon monoxide rose to toxic levels within the home because the installer failed to properly vent the water heater to the outside. Thus, the air in Xia's home was polluted. The exclusion applies. Liability imposed on the named insured is not within this policy's coverage. Denial of summary judgment to Xia was correct on the alternative basis of this reasoning.

Xia argues that the facts of this case are analogous to Kent Farms, not Quadrant. We disagree.

She argues that unlike the sealant in Quadrant, carbon monoxide occurs naturally and is not harmful in small quantities. She further argues that the carbon monoxide in this case was never "used." And she argues that she would not have been injured if the water heater was used as intended.

But all of these arguments go to causation, which is immaterial under the express language of the pollution exclusion provision in this case. As already discussed, the language of the pollution exclusion in this case expressly applies "**regardless of the cause** of the pollution and whether any other cause of said

---

[58] Id.

bodily injury . . . acted jointly, concurrently or in any sequence with said pollutants."[59]

Further, these arguments do not materially distinguish this case from Quadrant. This case, like Quadrant, involved a pollutant causing injury because it is a pollutant. Xia's reliance on Kent Farms is misplaced, because Kent Farms is factually distinguishable. In that case, a fuel deliveryman was injured when the fuel storage tank's intake valve malfunctioned and diesel fuel began to spill from the tank.[60] While attempting to prevent the spill, the deliveryman was doused with fuel, which went down his throat and into his lungs and stomach.[61] Kent Farms' insurance company denied coverage based on a pollution exclusion.[62] On review, the supreme court determined that the pollution exclusion was inapplicable, stating that the cause of action was "rooted in negligence, not in environmental harm caused by pollution" because the plaintiff alleged "negligence in the maintenance and design of a fuel storage facility that resulted in immediate bodily injury when a high-pressure jet of liquid struck him."[63]

As Quadrant later noted, Kent Farms "distinguished between cases in which the substance at issue was polluting at the time of the injury and cases in

---

[59] Clerk's Papers at 375 (emphasis added) (emphasis omitted).

[60] Kent Farms, 140 Wn.2d at 397-98.

[61] Id. at 398.

[62] Id.

[63] Id. at 399.

16

which the offending substance's toxic character was not central to the injury."[64]

In Kent Farms, the court reasoned, "[The deliveryman] was not polluted by diesel fuel. It struck him; it engulfed him; it choked him. It did not pollute him. Most importantly, the fuel was not acting as a 'pollutant' when it struck him . . . ."[65] Quadrant later distinguished Kent Farms on this basis.

We distinguish this case from Kent Farms on the same basis. The carbon monoxide was "acting as a pollutant" at the time of Xia's injury and the substance's toxic character is central to her injury. That the negligent installation of the water heater caused the toxic levels of gas to escape is immaterial. Like in Cook and Quadrant, this case arises from a toxic substance, acting as such, causing physical injury. That negligence was also involved is not material for the reasons explained in those cases. Quadrant controls.

Finally, we note that there is no argument here that the policy is illusory because of its terms and conditions. Likewise, there is no insurance legislation that has been called to our attention to address the breadth of the pollution exclusion in this case. Both points were discussed in Quadrant.[66] Neither is at issue here.

To summarize, the pollution exclusion applies. The toxic levels of gas in Xia's home polluted the air. There was no duty to defend on the basis of this

---

[64] Quadrant Corp., 154 Wn.2d at 182.

[65] Kent Farms, 140 Wn.2d at 401.

[66] Quadrant Corp., 154 Wn.2d at 184-86.

exclusion. On this alternative basis, we hold that the trial court properly denied summary judgment to Xia.

### Townhouse Exclusion

Xia argues that the trial court erred when it concluded that ProBuilders had no duty to defend based on the insurance policy's Condominium or Townhouse Liability Exclusion ("townhouse exclusion"). We agree.

Here, the trial court ruled, in part, that when ProBuilders denied coverage in its January 17, 2008 letter "it was correct because the townhouse exclusion properly applied and excluded all coverage."[67] This was incorrect.

As we stated earlier in this opinion, the threshold question in determining whether there is a duty to defend is whether Xia's amended complaint in her personal injury action, construed liberally, alleges facts that could, if proven, impose liability covered by the ProBuilders policy.

As counsel for Xia properly acknowledged during oral argument of this case before this court, the subject property is not a condominium. Thus, that part of the exclusion in the policy is not material to this case. ProBuilders does not argue otherwise.

The townhouse exclusion excludes from coverage:

> Property damage or bodily injury within the products-completed operations hazard arising from, related to or in any way connected with your work or your work product which is, is part of or is incorporated into or upon a . . . ***townhouse*** project, or to personal injury or advertising injury arising or resulting from your operations performed upon, at or for a . . . ***townhouse*** project.[68]

---

[67] Clerk's Papers at 1299.

[68] Clerk's Papers at 379 (emphasis added) (emphasis omitted).

18

Thus, the question is whether Xia's home was part of a "townhouse project." The policy does not define the term "townhouse project." ProBuilders contends that Xia's home constitutes a "townhouse" within the meaning of the exclusion. Xia disagrees, asserting that she owns a "zero lot line" home and that it does not fall within the ordinary meaning of the policy exclusion for townhouse. She further asserts that to the extent the term is ambiguous, this ambiguity imposed on ProBuilders the duty to defend.

Where terms are undefined, they "'must be given their plain, ordinary, and popular meaning.'"[69] In determining this meaning, a court may look to standard English dictionaries.[70] "If words have both a legal, technical meaning and a plain, ordinary meaning, the ordinary meaning will prevail unless it is clear that both parties intended the legal, technical meaning to apply."[71]

The Merriam-Webster Online Dictionary defines "townhome" or "town house" as: "[A] house that has two or three levels and that is attached to a similar house by a *shared* wall."[72] And Black's Law Dictionary defines "townhouse" or "townhome" as: "A dwelling unit having usu[ally] two or three stories and often

---

[69] Tyrrell, 140 Wn.2d at 133 (internal quotation marks omitted) (quoting Kitsap County, 136 Wn.2d at 576).

[70] Id.

[71] Kitsap County, 136 Wn.2d at 576.

[72] Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/town+house (last visited July 31, 2015) (emphasis added).

connected to a similar structure by a *common* wall and (particularly in a planned-unit development) sharing and owning in common the surrounding grounds."[73]

These definitions explain that the plain meaning of a townhouse is a structure that has either a "shared" or a "common" wall with adjacent units. Looking to Xia's complaint on its face, it is not clear whether her home falls within the plain meaning of this definition. Whether Xia's home had shared or common walls is the determinative question for purposes of applying this exclusion. Accordingly, because coverage was not clear from examining the face of the complaint but might have existed, ProBuilders had a duty to investigate the claim and give the insured the benefit of the doubt.

Further, we note that the allegations in Xia's complaint conflicted with facts either known or that should have been known to ProBuilders. Specifically, ProBuilders knew that Xia's home was marketed as a "zero lot line" home. A zero lot line townhouse must have "independent structural walls."[74] Specifically, an air gap must exist between the structural walls of the units.

Presumably, when underwriting the policy it issued in this case, ProBuilders either knew or should have known of the physical characteristics of the units in this development. In either event, at minimum, the insurer had a duty to investigate to verify whether the home had shared or common walls in order to apply the townhouse exclusion. There is no evidence in this record to show that it did so.

---

[73] BLACK'S LAW DICTIONARY 1720 (10th ed. 2014) (emphasis added).

[74] Clerk's Papers at 177.

In sum, on examining the "eight corners" of Xia's amended complaint and the policy, it was unclear whether the townhouse exclusion applied. Because of the uncertainty, the proper course of action for ProBuilders was to investigate and defend under a reservation of rights and commence a declaratory judgment action to obtain a court ruling on the applicability of the exclusion.[75] ProBuilders was not entitled to make this judgment on its own, leaving its insured to undertake its defense at its own expense.

ProBuilders makes several arguments why we should accept its reading of the word "townhouse." But these are arguments that should have been made to the trial court in a declaratory judgment action following the acceptance of a tender of defense under a reservation of rights and investigation.

ProBuilders argues that Xia consistently referred to her house as a "town home" or "town house" in her original and amended complaints. ProBuilders also argues that photographs of the Villaggio townhouses reveal that they are connected by shared walls with no visible air space between the units and thus, they fall within the definition of "townhouse." These are factual matters to be resolved by a court in a declaratory action, following acceptance of a tender of defense under a reservation of rights.

ProBuilders argues that American States Insurance Co. v. Delean's Tile and Marble LLC "disposes of" Xia's argument that the air gap between the units indicates that her home is not a "town home."[76] In that case, this court stated

---

[75] See Truck Ins. Exch., 147 Wn.2d at 761.

[76] 179 Wn. App. 27, 319 P.3d 38 (2013).

that contractors were "incorrect in their contention that the one inch air space between the inner walls of the buildings legally separates the units."[77] ProBuilders asserts, "As in Delean's, the Villaggio townhouse units at issue here were not noticeably separate from one another and were for all appearances part of a single building with shared siding and a shared roof."[78] Had this argument been made to the trial court in a declaratory judgment action following acceptance of defense under a reservation of rights, we believe the court would have rejected it.

The Delean's court was considering whether townhouse buildings with a one inch air space between them fell within the plain meaning of the term "detached."[79] The court was not considering whether such homes fell within the plain meaning of the term "townhouse."

To summarize, to the extent the townhouse exclusion was a basis for the refusal to defend, the refusal to defend was incorrect. Acceptance of the tender of defense with a reservation of rights, followed by investigation and a declaratory judgment action to obtain a court ruling on this exclusion was the proper course of action.

---

[77] Brief of Respondent PBSIC Specialty Insurance Company RRG at 25 (quoting Delean's, 179 Wn. App. at 39)).

[78] Id.

[79] Delean's, 179 Wn. App. at 38-40.

Thus, to the extent the trial court granted summary judgment to ProBuilders on this basis, it erred. Because we have decided that the pollution exclusion provided a basis to decline to defend, this error was harmless.

*Formal Tender*

We next consider whether the trial court properly granted summary judgment to ProBuilders based on the named insured's failure to formally tender defense against Xia's personal injury action. We hold that granting summary judgment on this basis was also incorrect.

Here, the trial court ruled, in part, that "there was no request for a defense of the suit from or on behalf of" the named insured to the insurer.

An insurer's duty to defend "'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'"[80] But "'[a]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired.'"[81] "Thus, 'breach of the duty to defend cannot occur before tender.'"[82] "The duties to defend and indemnify do not become legal obligations until a claim for defense or indemnity is tendered."[83]

---

[80] Expedia, Inc., 180 Wn.2d at 802-03 (internal quotation marks omitted) (quoting Am. Best Food, Inc., 168 Wn.2d at 404-05).

[81] Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 421, 191 P.3d 866 (2008) (internal quotation marks omitted) (quoting Griffin v. Allstate Ins. Co., 108 Wn. App. 133, 140, 29 P.3d 777, 36 P.3d 552 (2001)).

[82] Id. (quoting Griffin, 108 Wn. App. at 141).

[83] Id. (emphasis omitted).

Here, ProBuilders argues that it had no duty to defend because its named insured failed to tender defense when Xia commenced her personal injury action. In doing so, it relies on policy language that states:

> [ProBuilders] will have the right and duty to defend you, the Named Insured, against any *suit* seeking those damages provided that no other insurance affording a defense against such a suit is available to you.[84]

In response, Xia makes several arguments. First, she argues that the facts of this case do not permit ProBuilders to rely on a formal tender where that would have been a useless act. Second, she argues that ProBuilders may not rely on tender as a condition precedent to its duty to defend where it cannot show prejudice from any lack of notice. Third, she argues that ProBuilders may not now rely on this reason since it advanced the exclusions in the policy as the sole bases for refusing to defend. Finally, she argues that the selective tender rule is inapplicable to this case. We address the first and last arguments and need not address the others.

With respect to the first argument, <u>Moratti v. Farmers Insurance Co. of Washington</u> is instructive.[85] There, the attorney for an injured claimant "made several demands to the insurance adjuster" who ultimately responded and "denied any negligence for the injury."[86] The claimant's attorney then called the insurance adjuster to ask if he should send the settlement package.[87] The

---

[84] Clerk's Papers at 372 (emphasis added) (emphasis omitted).

[85] 162 Wn. App. 495, 254 P.3d 939 (2011).

[86] <u>Id.</u> at 499-500.

[87] <u>Id.</u> at 500.

adjuster told him not to bother and informed him that the decision on no liability was final.[88]

There was a settlement between the claimant and the insured.[89] The insured agreed to pay a substantial sum and stipulated to entry of judgment against him in exchange for a covenant not to execute on the judgment against him.[90] He assigned to the claimant his claims against his insurer.[91] The court approved the settlement at a reasonableness hearing.[92]

The claimant/assignee of rights against the insurer commenced an action against the insurer.[93] At the conclusion of trial, the trial judge entered judgment against the claimant.[94]

On appeal, this court reversed.[95] This court rejected the insurance company's claim that the failure to make a formal demand for a defense barred the plaintiff's claims.[96] It stated:

> We can give no credence to Farmers' assertion that it did not have to respond until 2004 because no settlement offer or demand was

---

[88] Id.

[89] Id.

[90] Id.

[91] Id. at 501.

[92] Id.

[93] Id.

[94] Id.

[95] Id. at 512.

[96] Id. at 504.

made or suit filed until then. Farmers' argument conveniently ignores that in October 2002, when [the claimant's] counsel inquired as to whether Farmers would reconsider its position if he sent the demand letter, he was told that Farmers' decision was final. ***Relying on Farmers' stated position, [the claimant's] counsel did not undertake the expense of submitting a futile demand letter to Farmers. Nor was he required to do so as the law does not require someone to do a useless act.*** Since it was Farmers' own representation that prevented a formal demand letter, it cannot now argue that failure to make the demand bars [the claimant's] claim.[97]

Here, like in Moratti, ProBuilders unambiguously stated to its named insured by letter dated January 17, 2008 that it would not defend its insured. Specifically, it stated it "will neither defend nor indemnify" the named insured and "any judgment or settlement obtained by [Xia] predicated upon damages that fall outside the [policy]" would be the responsibility of the named insured.[98] It also asked for pleadings in the event of a lawsuit. These were provided, albeit by Xia.

The plain words of this pre-suit communication indicate ProBuilders would not be involved even if either a settlement or a lawsuit followed. Otherwise, there would have been no reason to mention "judgment" or "settlement" in this letter. And this record makes plain this statement of position did not change when the suit was filed, despite the lack of any material change in the allegations of Xia's amended complaint. The record is equally clear that Xia provided pleadings and other materials to ProBuilders to keep it apprised of developments.

It is noteworthy that ProBuilders, by letter dated June 12, 2008 to counsel for Xia, reiterated the statement of position in its prior letter to its named insured.

---

[97] Id. at 504-05 (emphasis added).

[98] Clerk's Papers at 285.

Specifically, it repeated that it "will neither defend nor indemnify" the named insured, using language that is substantially similar to the January 17, 2008 letter to the named insured.[99]

Why ProBuilders deemed it necessary to communicate with Xia, who was never its named insured, is left unexplained in this letter. But it is inconsistent with the argument that ProBuilders now makes that the lack of notice of Xia's "suit" from its named insured is fatal to its duty to defend.

ProBuilders asserts that "Xia is not [ProBuilders'] insured and has no authority under Washington law to tender a defense to an insurer with which she has no contractual relationship."[100] And it asserts that Xia's communications with ProBuilders "are wholly irrelevant to the issue of tender—an issue that turns entirely on [the named insured's] communications with its insurer."[101] ProBuilders provides no authority to support these assertions. We must conclude that this lack of citation to authority means there is none.

We note that ProBuilders received notice of Xia's subsequent lawsuit when Xia sent a courtesy copy of the summons and complaint to ProBuilders in January 2009. And in December 2010, Xia's attorney sent a letter to ProBuilders with the stated purpose of "provid[ing] notice that your insureds have entered into a tentative agreement to assign claims to Ms. Xia that they have against you."[102]

---

[99] Id. at 292.

[100] Brief of Respondent PBSIC Specialty Insurance Company RRG at 12.

[101] Id. at 13.

[102] Clerk's Papers at 912.

The letter stated, "The defense of Ms. Xia's claims was tendered to you and rejected on June 12, 2008."[103] It asserted that ProBuilders was "wrongfully relying on [the] pollution exclusion" and that the "townhouse exclusion is not a valid basis to deny coverage or defense."[104] It further stated:

> A hearing on a motion to approve the settlement and its reasonableness has been scheduled for February 7, 2010. *Unless we receive written correspondence within 30 days of the date of this letter stating that you will provide coverage and defend [Issaquah Highlands], Ms. Xia will be left with no other option but to enter into the settlement and move forward with the hearing to approve its reasonableness.* Once the settlement is executed and approved, Ms. Xia will immediately bring actions against [ProBuilders] based [on] its failure to defend and the theories referenced above.[105]

Given these facts, we conclude that ProBuilders' argument is unpersuasive. The pre-suit letter to its named insured clearly states it would not be involved even if a settlement or a lawsuit followed. Otherwise, there would have been no reason to mention "judgment" or "settlement" in this letter. As Moratti indicates, the law does not require a useless act.

Moreover, ProBuilders dealt with Xia, just as the insurer in Moratti did. The stream of communication included sending copies of the pleadings to ProBuilders, notice of a potential settlement, and notice of the reasonableness hearing once settlement was achieved. We simply cannot envision what more

---

[103] Id.

[104] Id. at 913, 914.

[105] Id. at 914 (emphasis added).

28

could have been done to get the insurer to withdraw its statement of position in the January 2008 letter and participate in the settlement.

In sum, the lack of the named insured formally tendering defense after filing of the lawsuit did not relieve ProBuilders of its duty to defend.

Xia also claims that the "selective tender" is inapplicable to this case. We conclude that a genuine issue of material fact exists with respect to this argument.

The supreme court explained the selective tender rule in Mutual of Enumclaw Insurance Co. v. USF Insurance Company.[106] The "selective tender" rule stands for the proposition that when an insured has not tendered a claim to an insurer, the insurer is excused from its duty to contribute to a settlement of the claim.[107] This rule "preserves the insured's right to invoke or not to invoke the terms of its insurance contracts," as "[a]n insured may choose not to tender a claim to its insurer for a variety of reasons."[108] The supreme court relied on Casualty Indemnity Exchange Insurance Co. v. Liberty National Fire Insurance Co. for these principles.[109] In that case, the court applied the select tender rule because equity dictated it based on the circumstances.[110] With respect to the

---

[106] 164 Wn.2d 411, 421, 191 P.3d 866 (2008).

[107] Id.

[108] Id. at 421-22.

[109] 902 F. Supp. 1235 (D. Mont. 1995).

[110] Id. at 1239.

29

facts of this case, it is highly implausible that the select tender rule is applicable, given the communications between the parties.

ProBuilders argues that the named insured's intent not to tender the suit to ProBuilders is evidenced by the fact that it formally tendered the suit to another insurance company. The intent of the named insured is clearly a material factual question.

It is true that this name insured sent a formal tender letter to another insurance company for Xia's claim. But this letter was sent after ProBuilders plainly stated that it would not defend against the claim. Thus, on this record, we believe it likely that any reasonable finder of fact would decide that the tender to another insurer was a decision to try to obtain insurance coverage from somewhere, given the express refusal of ProBuilders to provide coverage.

In short, there was, at least, a genuine issue of material fact of the intent of the named insured in tendering the defense elsewhere.

Nevertheless, to the extent the trial court granted summary judgment on this basis, its ruling was harmless. That is because the pollution exclusion applied to bar coverage.

## BAD FAITH

Xia argues that ProBuilders breached its common law duty of good faith. Specifically, she contends the insurer's reading of the policy was done in bad faith.[111] We disagree.

---

[111] Brief of Appellant at 40-46.

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith."[112] "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded."[113] "An insurer may not refuse to defend based upon an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured."[114] A party's refusal to defend based on an arguable interpretation of the policy is bad faith.[115] But "[w]hen an insurer correctly denies a duty to defend, there can be no bad faith claim based on that denial."[116]

Here, as we discussed earlier in this opinion, ProBuilders correctly determined that it had no duty to defend based on the pollution exclusion. Summary judgement dismissing this common law claim was proper on this basis. Accordingly, there can be no bad faith claim on the basis of the refusal based on the pollution exclusion.

## CPA & IFCA CLAIMS

Xia next argues that summary dismissal of its statutory claims against ProBuilders under the Consumer Protection Act (CPA) and the Insurance Fair Conduct Act (IFCA) was improper. We agree.

---

[112] Smith, 150 Wn.2d at 484.

[113] Am. Best Food Inc., 168 Wn.2d at 412.

[114] Id. at 414.

[115] Id.

[116] United Servs. Auto. Ass'n. v. Speed, 179 Wn. App. 184, 203, 317 P.3d 532, review denied, 180 Wn.2d 1015 (2014).

These statutory claims are separate from the common law claim. Xia's CPA claim appears to be premised on the alleged violation of certain insurance regulations. These regulations also provide the basis for Xia's IFCA claims. There are genuine issues of material fact whether ProBuilders violated these regulations.

Xia argues that ProBuilders acted unreasonably in denying a claim for coverage or payment of benefits under IFCA, RCW 48.30.015(2). Xia also relies on two insurance regulations, WAC 284-30-330(4) and WAC 284-30-370, to argue that ProBuilders had a duty to conduct a reasonable investigation before denying coverage. WAC 284-30-330(4) provides that refusing to pay claims "without conducting a reasonable investigation" constitutes an unfair or deceptive act of the insurer. WAC 284-30-370 provides standards for a prompt investigation of a claim, including that an insurer must complete its investigation within 30 days unless the investigation cannot reasonably be completed within that time. Under RCW 48.30.015(5), a violation of either of those regulations constitutes a violation for purposes of RCW 48.30.015(2).

Xia argues that, at a minimum, this court should remand to a jury to determine whether ProBuilders acted unreasonably in its investigation and whether it timely communicated with its insured. ProBuilders argues that this court should decline to consider Xia's arguments based on IFCA because they are raised for the first time on appeal. ProBuilders asserts that Xia's summary judgment argument was limited to a claim for bad faith breach of the duties to defend and indemnify and were not based on IFCA.

But Xia's complaint alleged violations of the CPA and IFCA, and in doing so, it specifically cited WAC 284-30-330 and WAC 284-30-370. Further, Xia expressly referenced these insurance violations in her response brief in opposition to ProBuilders' motion for summary judgment. Accordingly, we conclude that these arguments were preserved for appeal.

We also conclude that there are genuine issues of material fact with respect to these issues. Specifically, the record shows that there are genuine issues of material fact about the reasonableness and promptness of ProBuilders' investigation. Summary judgment on the CPA and IFCA claims was improper.

## ATTORNEY FEES

Xia argues that she is entitled to attorney fees in the trial court and on appeal on both statutory and equitable grounds. We hold that she is not entitled to fees under Olympic Steamship Co. Inc. v. Centennial Insurance Co.[117] Determination of whether she is entitled to fees based on her statutory claims is premature.

Attorney fees may be awarded to a litigant when authorized by contract, statute, or a recognized ground of equity.[118] Xia first requests fees as a prevailing party under the CPA, RCW 19.86.090, and under IFCA, RCW 48.30.015(1), (3). Both of these statutes provide for an award of fees to the prevailing party. Because these claims are not yet properly adjudicated, a prevailing party has not yet been determined. The request is premature.

---

[117] 117 Wn.2d 37, 811 P.2d 673 (1991).

[118] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

Xia also requests fees under <u>Olympic Steamship</u>.  Under that case "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of [the] insurance contract . . . ."[119]  Because Xia is not the prevailing party on the duty to defend claim, she is not entitled to fees based on that case.

Finally, Xia requests fees "under the equitable rule for the 'bad faith conduct of the losing party.'"  This also requires Xia to be the prevailing party.

We decline to award Xia fees on any of the grounds she asserts. That is without prejudice to her right to seek fees on remand for those matters remanded to the court for further proceedings.

We affirm the grant of summary judgment to ProBuilders on the alternative basis that there was no duty to defend because of the pollution exclusion.  We reverse the dismissal of the Consumer Protection Act claim and the Insurance Fair Conduct Act claim.  The request for an award of attorney fees based on the two statutory claims is premature.  There is no basis for an award of fees based on <u>Olympic Steamship</u>.  We remand for further proceedings.

Cox, J.

WE CONCUR:

---

[119] <u>Olympic Steamship</u>, 117 Wn.2d at 53.

34